## TOMLINSON *v.* BRANCH.

1. The doctrine that a State legislature, unrestricted by constitutional prohibition, has power to exempt certain property from taxation, reiterated.
2. Where a railroad company, by its charter, was granted such an exemption for a limited period, and was afterwards merged in another railroad company, which became invested with all its property, rights, and privileges, the exemption and its limitation accompanied the property, and a perpetual exemption from taxation in the charter of the latter company would not be extended to the property so acquired, without express words, or necessary intendment to that effect.
3. Where two railroad companies are consolidated the presumption is, that each of the two united lines of road will be respectively held with the privileges and burdens originally attaching thereto, unless the contrary is expressed.

APPEAL from the Circuit Court for the District of South Carolina.

Branch and others, stockholders of the South Carolina Railroad Company, filed a bill in equity in the court below against the said company, as also against one Tomlinson, the State Auditor, and others, certain county collectors, to enjoin the company from paying and the others from collecting certain taxes imposed on the said company in pursuance of an act of the legislature of South Carolina, passed in April, 1868, and another act passed in February, 1870; it being alleged in the bill that the said company was, by its charter, exempt from taxation, and that no adequate legal remedy existed under the laws of the State to obtain redress; and that the company declined to adopt any measures for obtaining it.

The question in the case was whether the company was entitled to an exemption from taxation which the legislature could not abrogate or disregard; it being conceded that the company was made taxable, if the legislature had the power to tax it.

The property of the company was derived from two sources, one portion being a railroad from Charleston to Hamburg, opposite the town of Augusta, Georgia, which

General statement of the case.

was constructed by and formerly belonged to the South
Carolina *Canal* and Railroad Company, and the other being
roads extending from Branchville on the line of the first
road, to Columbia and Camden, which were constructed by
the South Carolina Railroad Company under its *own* charter.
This court distinguished between the two parts.

The diagram will exhibit the roads, as well as another
one from Columbia towards Augusta, incidentally mentioned
in the case.

*Messrs. D. H. Chamberlain, D. T. Corbin, and P. Phillips, for the appellants; Messrs. J. Conner and A. G. McGrath, contra.*

Mr. Justice BRADLEY stated the cases as respected both parts of the road, and delivered as to each the opinion of the court.

The South Carolina Canal and Railroad Company was chartered by the legislature of South Carolina in December, 1827, for the purpose of constructing a railroad or canal, or both, from Charleston to each of the towns of Columbia, Camden, and Hamburg, with the exclusive right for that purpose for thirty-six years. In a supplement of January, 1828, amongst other things, it was enacted as follows, viz.:

" That during the first period of thirty-six years the stock of the company, and the real estate that may be purchased by them and connected with, and be subservient to the works herein authorized, shall be exempted from taxation."

Under this charter the company constructed a railroad from Charleston to Hamburg only, a distance of nearly 140 miles. This road was completed in 1833, and it is admitted that the thirty-six years of exemption from taxation expired in 1869, and cannot be invoked in support of the present suit.

In 1835 the Cincinnati and Charleston Railroad Company was incorporated by the legislature of South Carolina, for the purpose of establishing a communication by railroad between Cincinnati and Charleston, through the States of Kentucky, Tennessee, North Carolina, and South Carolina, with power to construct branches not conflicting with any chartered rights, and with power to use any section of the said railroad before the whole should be completed. By the 43d section of this charter it was enacted that the capital stock of this company, the dividends thereon, and all the property and estate, real and personal, belonging to said company, should be forever exempt from taxation, unless the dividends should exceed lawful interest. Subsequently the project of

extending the road into other States was abandoned, and the name of the company was changed, first to that of the Louisville, Cincinnati, and Charleston Railroad Company, and afterwards to that of the South Carolina Railroad Company. The company never built any portion of the railroad authorized by its charter, except from Branchville to Columbia, and a branch to Camden. The exclusive privileges conceded to the South Carolina Canal and Railroad Company rendered it difficult, if not impracticable, to effect a communication with Charleston without the consent of that company. Hence negotiations for an amalgamation of interests between the two companies took place as early as 1837, and it was practically effected in that and the ensuing years. The mode in which it was done was that the stockholders of the South Carolina Canal and Railroad Company exchanged their stock in that company for an equal number of shares in the Louisville, Cincinnati, and Charleston Railroad Company (afterwards called the South Carolina Railroad Company), and received in addition a bonus of twenty-five per cent. By this means the latter company acquired the entire control of the former, and used the road of the former company between Branchville and Charleston, instead of building a separate road of their own.

In 1843, by an act of the legislature passed the 19th of December, this amalgamation was formally legalized. The section relating to this subject was expressed in the following terms:

"That whenever the written consent of all the stockholders of the South Carolina Canal and Railroad Company shall have been obtained, the said South Carolina Canal and Railroad Company shall be *merged* in the said South Carolina Railroad Company, and thereupon and thereafter all the rights, privileges, and property belonging to the said South Carolina Canal and Railroad Company shall be vested in the said South Carolina Railroad Company, and the said South Carolina Railroad Company shall be liable for all the debts and contracts of the said South Carolina Canal and Railroad Company; and the stock and property of the said South Carolina Railroad Company

shall be subject to the same liens and charges to which the stock and property of the said South Carolina Canal and Railroad Company may be liable, and in the same relative order in which the said liens and charges now stand."

It is conceded that the terms of this law were complied with. And now the defendants in error contend that by the "merger" of the South Carolina Canal and Railroad Company in the South Carolina Railroad Company, the property of the former is held by the latter, with all the rights and privileges of its own charter attaching thereto, including the right of perpetual exemption from taxation.

If this is so, the State, by giving the latter company the power to acquire the property of the former, has lost a valuable prerogative in reference to that property, which it possessed up to the time when the act of 1843 was passed—namely, the right to tax the property after the expiration of the thirty-six years. Such a conclusion of the rights of the State ought not to be admitted without a clear expression of the legislative assent. It does not seem to us that the section in question contains such clear assent. In declaring that the one company shall be merged in the other, and that the rights, privileges, and property of the one shall be vested in the other, the legislature cannot be understood to mean that the restrictions, limitations, and burdens affecting that property, and imposed for the benefit of the public or of individuals, shall not go with it. The rights and privileges go with it, and those rights and privileges can with difficulty be separated from the restrictions and duties by which they are measured and qualified. For example, the right to charge toll and freight can hardly be separated from the limitation of the rates of toll and freight which the charter of the merged company imposed. If the rates of freight were limited in that charter to five cents per ton per mile, can it be claimed that the new company is discharged from that limitation altogether? Or if its own charter allows a charge of ten cents per ton per mile, can it claim the right to charge ten cents for freight transported on the old road?

If the hypothesis were reversed, and the old charter allowed ten cents, whilst the new allowed but five, the company would not hesitate, under the grant of the rights and privileges of the old, to continue to charge ten cents, as the former company had done. And they would have reason on their side. Had it been intended that the road and property of the old company should be owned and controlled by the new company under its own charter, in the same manner as its other property, it would have been easy to have so declared. Not having so declared, we cannot presume that such was the intent. The keeping alive of the rights and privileges of the old company, and transferring them to the new company in connection with the property, indicates the legislative intent, that such property was to be holden in the same manner and subject to the same rights as before. The owners of the property were to lose no rights by the transfer, nor was the public to lose any rights thereby. Of course, these remarks do not apply to those corporate rights and franchises of the old company, which appertain to its existence and functions as a corporation. These became merged and extinct. But all its rights and duties, its privileges and obligations, as related to the public, or to third persons, remain, and devolve upon the new company. This seems to us the most obvious and natural construction of the act, and leads to the conclusion that, as to the road, property, and works appertaining to the main line from Charleston to Hamburg, the South Carolina Railroad Company has no claim to exemption from taxation.

This view of the subject is corroborated by the decision of this court in the case of *The Philadelphia, Wilmington, and Baltimore Railroad Company* v. *Maryland*.* It there appeared that the railroad line between Baltimore and Philadelphia had originally belonged to several distinct organizations chartered by the States of Maryland, Delaware, and Pennsylvania. One of these companies was exempt from certain taxation, and it was claimed by the consolidated company

---

* 10 Howard, 376.

that this exemption was transferred to it and affected all parts of the line. The act authorizing the union of the several companies provided that the "said body corporate so formed should be entitled . . . to all the powers and privileges and advantages then belonging to the former corporations." And the new company claimed the exemption from taxes as one of the privileges and exemptions acquired. But the court held that the exemption did not extend to a portion of the line to which it had not extended before the union. It considered the evident meaning of the law to be, that whatever privileges and advantages either of the former companies possessed should in like manner be held and possessed by the new company, to the extent of the road which the said former companies had respectively occupied before the union; that it should stand in their place, and possess the power, rights, and privileges they had severally enjoyed in the portions of the road which had previously belonged to them.

It seems to us that this decision is directly in point, and governs that branch of the case now under consideration.

Reference is made, however, to certain decisions of the courts of South Carolina, which, it is contended, settle the question the other way.

The first case referred to is *South Carolina Railroad Company* v. *Blake*,\* which arose out of an attempt of the South Carolina Railroad Company to condemn certain land for its purposes in Charleston. The owner disputed the right of condemnation on the ground that the road and works had long before been located, and that, therefore, the power was gone. But the court held that the power existed under both charters, and might be exercised under either—first, showing by affidavit the necessity of the use. The observations on the subject of taxation were *obiter dicta;* but, as far as the judgment goes it does not seem to us to militate against the views we have taken, but rather to confirm them by recognizing the continued vitality of the powers con-

---

\* 9 Richardson, 233.

tained in the old charter.   These cannot fairly be claimed
without accepting also its duties and burdens.

Another case was that of *The State ex rel. South Carolina
Railroad Company* v. *Hood, State Treasurer,** in which the
company claimed exemption from a State income tax im-
posed in 1867, under a law passed the year preceding, tax-
ing the gross incomes of all railroads *not exempt by law*.   The
Court of Appeals held that the company was exempt by law,
both under the thirty-six years' exemption in the old char-
ter (which had not then expired), and under the exemption
in the charter of 1835; and expressly waived the considera-
tion of the effect of the act of union passed in 1843.   This
case, therefore, furnishes no authority on the subject.

The remaining case is that of *The South Carolina Railroad
Company* v. *The Columbia and Augusta Railroad Company*,†
decided in 1867.   The defendant company, in that case, was
chartered in 1858 with authority to construct a railroad from
Columbia to Augusta.   The South Carolina Railroad Com-
pany claimed that this would be an invasion of its exclusive
privileges, as guaranteed in the charter of the South Caro-
lina Canal and Railroad Company and in that of the Cin-
cinnati and Charleston Railroad Company.   The learned
chancellor, by whom the case was decided, assumed that
the South Carolina Railroad Company was entitled to both
guarantees; but he held that the projected road would not
be an infringement of either.   The guarantee given to the
old company was that of an exclusive right (for thirty-six
years from the completion of its road) of having a railroad
between Charleston as one terminus, and the towns of Co-
lumbia, Camden, and Hamburg, respectively; and the guar-
antee given to the Cincinnati and Charleston Railroad Com-
pany was, that for thirty-six years from January first, 1836,
the State should not authorize any other road within twenty
miles of its road, which should connect any points thereon,
or should run in the general direction thereof; which exclu-
sive privilege was not to extend to branches, but only to the

---

* 15 Richardson, 177.                    † 13 Richardson's Equity, 339.

main road. The chancellor held that the first guarantee secured the company only against other roads leading to Charleston, which the projected road did not do; and that the second guarantee secured the company only against roads interfering with the main line of the Cincinnati and Charleston company, which the projected road did not do, because this main line, as originally contemplated, was to extend from Charleston, *via* Branchville and Columbia, to Cincinnati; and the only part of it ever constructed was the road from Charleston *via* Branchville to Columbia; with which the projected road did not interfere. This was all that the chancellor decided. It is true that, in the course of his opinion, he does say that after the acquisition of the old road, extending from Charleston to Hamburg, the charter of the South Carolina Railroad Company extended over it, the same as if that company had built it. But that proposition was not material to the conclusion to which he came. And when he assumed that the guarantee of the old charter still subsisted with regard to the old road, and based his judgment upon that assumption as one of its grounds, his opinion is virtually an authority for the other proposition, that the company must be regarded as holding the old road, so far as the rights of the public are concerned, subject to the conditions and limitations of that charter, as well as with its privileges and immunities.

Be this, however, as it may, we find nothing in this case or the other cases referred to, which, in our view, affects the authority of the case of *The Philadelphia, Wilmington, and Baltimore Railroad Company* v. *Maryland,* or the soundness of the conclusion to which we have come, as before expressed.

The next inquiry relates to the line of railroad constructed by the South Carolina Railroad Company, under its own charter; being that portion between Branchville and Columbia and Camden. We have seen that the company, by its original charter granted in 1835, had the grant of a perpetual exemption from taxation. We have already decided that it is competent for the legislative power to grant such

an exemption.  But it is contended on the part of the State, that this exemption, and all other chartered privileges of the company, are subject to alteration and repeal, by virtue of the 41st section of an act, passed in December, 1841, by which it is declared—

" That it shall become part of the charter of every corporation, which shall, at the present, or any succeeding session of the General Assembly, receive a grant of a charter, or any renewal, amendment, or modification thereof ( unless the act granting such charter, renewal, amendment, or modification shall, in express terms, except it), that every charter or incorporation granted, renewed, or modified as aforesaid, shall at all times remain subject to amendment, alteration, or repeal, by the legislative authority."

Now, there can be no doubt but that the act of 1843, authorizing the consolidation of the two companies, or the merger of the one into the other, was an act modifying the charter of the South Carolina Railroad Company; but the third section of that act withdrew the charter from the operation of the act of 1841.  It was in these words:

" SECTION 3. The said South Carolina Railroad Company is hereby excepted from the provisions of the forty-first section of an act entitled, An act to incorporate certain villages, &c. [referring to the act in question], but nothing herein contained shall be construed as exempting the said company from the provisions of the said forty-first section, upon any future grant, renewal, or modification of their charter."

The allegation on the part of the State is, that subsequent legislation was obtained by the company, which modified its charter, and thus rendered the whole charter liable to subsequent alteration and repeal.  The legislation referred to consists of two several acts, namely: "An act to lend the credit of the State to secure certain bonds, *to be issued* by the South Carolina Railroad Company, and for other purposes, passed December 21st, 1865;" and "An act to amend the act last aforesaid, passed the 19th day of September, 1866."  It is very doubtful whether these acts can be re-

garded as amending or modifying the charter of the company. They merely authorize the extension of certain bonds made by the company (which the State had guaranteed), by the issue of new bonds of like character, and the continuation of the mortgage for securing the payment of said bonds. But whatever may be thought on this point, the third section of the act of 1843 clearly withdraws from the operation of the act of 1841 (by which power to amend and repeal is reserved) the entire charter of the company except as to future grants, renewals, and modifications. Such future grants only were to be subject to alteration and repeal. This seems to us conclusive of the point raised, and no further argument is necessary.

It is our opinion, therefore, that the part of the line now under consideration is exempt from taxation; and that so much of the decree as relates thereto is correct.

DECREE REVERSED, with directions to enter a decree making the injunction perpetual as to all that part of the line and railroad of said South Carolina Railroad Company, which extends from Branchville to Columbia and Camden, and as to all property and stock of said company, properly apportionable and applicable to the said portion of line and railroad, and dismissing the bill as to all the residue of the railroad property and stock of said company, and that such further proceedings be had as may be necessary to perfect and carry out said decree.