## The I. & G. N. R'y Co. v. Anderson County.

### (Case No. 4848.)

1. **Statute construed.**—The act of March 10, 1875, creating an exemption from taxation, known as the compromise act, was for the relief of the International Railroad, and both the language and intent of that law were to exempt that road from taxation for the period mentioned in the act, except as to county taxes in such counties as had donated their bonds to aid in its construction.

2. **Same.**— The International & Great Northern Railroad Company was a necessary party to any settlement to be made of the claims of the International Company against the state, resulting from the fact that the consolidated company then held all the rights, franchises and property of the two corporations, whose existence was merged in its own, and by and through which alone the rights and claims resulting to the International Railroad Company under its original charter could be asserted or settled.

3. **Same.**— The compromise act of March 10, 1875, was intended to restrict the exemption from taxation of property belonging to the consolidated company to such property as it held under charter originally granted to the International Railroad Company, and that the benefits otherwise extended to the consolidated company should be for and on account of acts which the International Company had already performed, under its charter, or such as the consolidated company might perform after the date of the compromise act under that charter or act.

4. **Same — Railway companies — Consolidation.**— The existence of the International and of the Great Northern Railroads as separate railroads did not depend on whether there was one common ownership or not, and the consolidation of the two railroad companies did not render that which was, before consolidation, two railroads, one, either in fact or law.

5. **Statute construed.**— The compromise act of March 10, 1875, limits the exemption in favor of counties and towns, to such as had donated lands to aid in the construction of the International Railroad.

6. **Same.**— The grant of land to the consolidated company made by said act and its exemption from taxation were not on account of any road constructed by the H. & G. N. R'y Co., or by the consolidated company under the charter powers of the H. & G. N. R'y Co., but were on account of railroad construction by the International Company or by the consolidated company acting under the charter powers of the International Railroad Company.

7. **Taxation** — Anderson county, having donated no bonds to aid in the construction of the International Railroad, has no right to collect a tax on that road, which is constructed through it.

8. **Constitutional law.**— The acts of August 5, 1870, and of March 10, 1875, were not by reason of their exemptions of property from taxation violative of the constitution then in force.

9. **Compromise act of 1875.**— Without passing on the validity of the act of August 5, 1870, *held*, that since the political department of the government recognized the existence of rights under that act which it settled by the compromise act of March 10, 1875, the propriety of that settlement will not be reviewed by the courts when called in question by a county, as in this suit.

10. **Taxation.**—The act of March 10, 1875, known as the compromise act, created a valid and binding contract sustained by a valuable consideration for the exemption of property from taxation, and was irrepealable. Cooley on Taxation, 52–56; Humphrey *v.* Pegues, 16 Wall., 249; Tomlinson *v.* Branch, 15 Wall., 460, cited and followed.

On Motion for Rehearing.

11. Practice in supreme court — Newly discovered evidence.— A rehearing will not be granted in the supreme court on the ground of newly discovered evidence; to grant it for such a cause, would be to exercise an original jurisdiction not contemplated by the constitution.

Appeal from Anderson. Tried below before the Hon. Peyton Edwards.

*Baker & Botts*, for appellant, cited Special Laws 14th Legislature (2d Session), p. 69; Sedgwick on Construction of Statutes, 39–43, 309; Boston Mining and Milling Co., 51 Cal., 624; Potter's Dwarris, p. 231; 6 Cal., 462; Cooley on Const. Lim., pp. 55, 127, 178, 179, and authorities; Cooley on Taxation, 53, and authorities there cited; Morawetz on Corporations, secs. 430, 552; Field on Corporations, sec. 517; Tadlock v. Eccles, 20 Tex., 792; Williams v. State, 48 Ind., 306; Prescot v. Chicago, 60 Ill., 121; Tomlinson v. Branch, 15 Wall., 460; Phil. & Balt. R. R. v. Maryland, 10 How., 376; Central R. R. v. Georgia, 2 Otto (92 U. S.), 665; Humphreys v. Pegues, 16 Wall, 244; 3 Fed. R., 266; 15 Fla., 637; 21 Minn., 315–344; R. S., art. 4260; Chesapeake R. R. v. Virginia, 94 U. S. (4 Otto), 718; Dodey v. Woolsey, 18 How., 360; Davis v. Gray, 16 Wall., 232.

*W. S. Herendon*, also for appellant.

*Gammage & Gregg*, for appellees, cited Special Laws 12th Legislature, p. 104; Const. 1869, sec. 19, art. XII; Brewer Brick Co. v. Brewer, 62 Me., 62; Bull v. Conro, 13 Wis., 238; Ohio Life Ins. Co. v. De Bolt, 16 How., 416; Loan Association v. Topeka, 20 Wall., 655; Durkee v. City of Janesville, 28 Wis., 464, and authorities from other states therein cited (9 Am. Rep., 500); Cooley on Taxation, 132, 144 (Cal.), notes; id., 133 (Ill.), notes, 1, 2 and 6; id., 138 (La.), notes 5 and 6; People v. McCreery, 34 Cal., 432; Lick v. Austin, 43 Cal., 590; Fletcher v. Oliver, 25 Ark., 289; Hunsacker v. Wright, 30 Ill., 146; Prim v. Bellville, 59 Ill., 142; Municipality v. Dubois, 10 La., 56; State Railroad Cases, 2 Otto, 612; Burroughs on Taxation, sec. 52; 62 Me., 66, 67; People v. Eddy, 43 Cal., 331; Lin Sing v. Washburn, 20 Cal., 534; 2 Pasch. Dig., pp. 1123, 1125; San Antonio v. Gould, 34 Tex., 49; Woods v. Durrett, 28 Tex., 439.

Exemptions from taxation are invidious, and only mere personal privileges. It is only a personal immunity, and does not follow the sale of the property except in a case of the plainest legislative intent. Pierce on Railroads, 486, 406 and note 4; Cooley on Taxation, 146, 152, and notes 1 and 2; Cooley's Const. Lim., 127, 287; Tucker v.

Ferguson, 22 Wall., 574; C. & O. R. R. Co. v. Virginia, 94 U. S., 718; Bailey v. Maguire, 22 Wall., 226; Morgan v. Louisiana, 93 U. S., 217; Memphis & C. R. R. v. Gaines, 3 Cooper Ch., 613; Wilson v. Gaines, 3 Cooper Ch., 603; Pacific R. R. Co. v. Cass County, 53 Mo., 17; Baltimore & Ohio R. R. v. Marshall, 3 West, 319; Same v. Wheeling, 3 West, 372; Crawford v. Burrell, 53 Penn., 220; Trask v. Maguire, 18 Wall., 391; Const. 1876, art. VIII, secs. 1–18; R. S., 4668, 4669–4673, 5786, 4688; Tax Law of 1876, p. 242, sec. 1; Story's Const., 127, 204, 206; E. Hartford v. Hartford Bridge Co., 10 How., 511; 11 Pet., 547, 548; 16 How., 416; Christ's Church v. Philadelphia, 24 How., 300; Stone v. Mississippi, 8 Otto, 814; E. Saginaw Manuf'g Co. v. Saginaw, 19 Mich., 259; Lord v. Town of Litchfield, 36 Conn., 116; Erie R'y Co. v. Commonwealth, 66 Penn., 84; Morawetz on Priv. Corp., sec. 428; St. John's College v. State, 15 Mo., 330.

STAYTON, ASSOCIATE JUSTICE.— The statement of the nature and result of this suit, as made by the appellant, which is admitted by the appellees to be substantially correct, is as follows:

"This is a suit to enjoin the county of Anderson from collecting county taxes on that part of appellant's railroad which was constructed in that county by the International Railroad Company under authority of its charter. The International Railroad Company was chartered in August, 1870, and was authorized to build and operate a railroad from a point on Red river, opposite Fulton, by the most practicable route across the state of Texas, by way of Austin and San Antonio, to the Rio Grande, at or near Laredo; and was exempt from all taxes for five years from the passage of said act,— say to August 5, 1875.

"By said charter, the state promised said company the state's bonds in the sum of $10,000 for each mile of road constructed under said charter, to be executed and delivered to the company as specified in said act.

"The company commenced the work, and progressed as required by the charter, and, after completing fifty miles to the satisfaction of the state, applied for the state's bonds on that fifty miles. The governor signed the bonds and sent them to the comptroller to be signed by him and registered, which he refused to do. Thereupon the company brought suit, asking that he be compelled by peremptory *mandamus* to perform those official acts; but the supreme court held that the comptroller could not be so compelled. The case is reported in 40 Tex., 537.

"In September, 1873, by vote of the stockholders of the two companies, the Houston & Great Northern Railroad Company, its property, rights and franchises, privileges and exemptions, were consolidated with the International Railroad Company, and this consolidation was approved by the state, on the 10th of March, 1875, in act entitled 'An act for the relief of the International Railroad Company, now consolidated with the Houston & Great Northern Railroad Company, under the name of the International & Great Northern Railroad Company.'

"In that act the state recognized the question of its liability for the bonds as provided in the International charter as existing and still open, and proposed to compromise said liability by giving in lieu of the bonds twenty sections of land to the mile, and exempting the International & Great Northern Railroad Company, 'its successors and assigns, and its railroads then constructed and thereafter to be constructed under the International charter and the compromise act, and all other property then or thereafter owned by the International & Great Northern Company or its successors, in virtue of the International charter, from all taxes of any character for twenty-five years, from the 5th of August, 1875, *except county and municipal taxes in such counties as have donated their bonds to aid in the construction of said railroad.*'

"Said compromise act further provided that if accepted by appellant, said act '*should be held to constitute an irrepealable contract and agreement between the state and appellants, its successors and assigns;*' and repealed such parts of the International charter as were inconsistent with said compromise act.

"The compromise act was accepted by appellant in the manner by it required, as to which no question arises.

"The International Railroad Company had built its road through Anderson county prior to May, 1872, and thirty-five miles of its road are in that county.

"On the 1st of May, 1872, the people of Anderson county voted $150,000 in the bonds of that county to the Houston & Great Northern Railroad Company, on condition that that company would build its road so as to intersect the International road at Palestine in said county by the 1st of July, 1873. That company complied with the conditions, and completed its road to and made the intersection required, by the end of December, 1872; and in January, 1873, the county issued and delivered its bonds to that company.

"A portion of these bonds were on hand at the time that company was consolidated with the International, in September, 1873,

but none of them were used by the consolidated company in the construction of the road under the International charter.

"The International & Great Northern Railroad Company has regularly listed and rendered for taxes, and paid taxes in Anderson county, all its road and property in that county, except that which it acquired by virtue of the International charter. This, it claims, is exempt under the compromise act aforesaid.

"In November, 1880, the county court of Anderson county levied on the International Railroad county taxes in that county for each of the years from 1875 to 1880, inclusive, the same as upon all other property in that county, and ordered the assessor to list the same and collect thereon the taxes so levied. The railroad company refused to list it, whereupon the assessor listed the thirty-five miles of road built in that county by the International Railroad Company; and appellant refusing to pay taxes thereon, the collector advertised for sale all of appellant's road from the depot in Anderson county to Longview, in Gregg county.

"Upon these facts this suit was filed to restrain said sale, on the ground:

"1st. That the property is exempt from taxation in 1875, because of the International charter; and

"2d. Because it is exempt from 5th August, 1875, because of the compromise act of 10th March, 1875."

There were many matters pleaded in defense of the suit, based upon the ground that the original act incorporating the International Railroad Company, and the act known as "the compromise act," were in violation of the constitution in force at the time of their passage; and further, that if the acts were valid, they were repealed or abrogated by the consolidation of the two companies; also by the present constitution, and by sale of the franchise and property of the corporation by a receiver in October, 1879. It was also claimed that the exemption was void because it violated the obligation of the contract entered into by Anderson county and the Houston & Great Northern Railroad Company in January, 1873, under which bonds of that county were issued to that company.

The appellees also pleaded that the county of Anderson was excepted from the operation of the act exempting property of the consolidated company which had been constructed under the original act incorporating the International Railroad Company, for the reason that the county had issued subsidy or donation bonds to the Houston & Great Northern Railroad Co., and the two corporations had been subsequently consolidated.

The cause was tried by the court without a jury, and all the defenses except the last named were found insufficient, but that defense was held good in part, and a judgment was rendered perpetuating the injunction only as to the taxes claimed for the year 1875, from which the company was held to be exempt under the original charter of the International Railroad Company, and the injunction which sought to restrain the collection of taxes for years subsequent to 1875 was dissolved and the bill dismissed.

From that judgment this appeal is prosecuted, and both parties have assigned errors, based upon the conclusions of fact and law which the judge who tried the cause, at the request of parties, gave.

The only assignment of error relied upon by the appellant is as follows: "The court erred in its eleventh conclusion of law in holding that, because Anderson county had donated its bonds to aid in the construction of the Houston & Great Northern Railroad, prior to its consolidation with the International, therefore it was the intention of the law that the International Railroad should not be exempt in Anderson county. The law creating the exemption was for the *relief of the International Railroad*, and both the language and the intent of that law are to exempt that road from taxation, except as to county taxes in such counties as had donated their bonds to aid in its construction. Anderson county donated none."

This raises the main question in the case, and as its solution depends upon the true construction of the act of March 10, 1875, so much of that act as bears upon the question is here inserted in full, and is as follows:

"Ninth. On March 10, 1875, the legislature passed 'An act for the relief of the International Railroad Company, now consolidated with the Houston & Great Northern Railroad Company under the name of the International & Great Northern Railroad Company,' as follows:

"Whereas, On the 5th day of August, A. D. 1870, the legislature of the state of Texas passed an act entitled 'An act to incorporate the International Railroad Company, and to provide for the aid of the state of Texas in constructing the same;' and

"Whereas, By the ninth section of said act, it is claimed the state of Texas obligated itself to donate and grant to the said company the bonds of the state of Texas to the extent and amount of $10,000 per mile for each mile of railroad constructed under said charter; and

"Whereas, The said railroad company has already constructed

about two hundred miles of railroad, in accordance with the provisions of its charter; and

· " Whereas, The said International Railroad Company has been consolidated with the Houston & Great Northern Railroad Company, under the name of the International & Great Northern Railroad Company; and

" Whereas, Questions have arisen between the state of Texas and the said company as to the legal liability of the state to deliver said bonds to the said company; and

." Whereas, It is important, both to the state and said company, that these questions should be definitely settled by a just and reasonable compromise; therefore, for that purpose —

· " Section 1. *Be it enacted by the Legislature of the State of Texas,* That in full settlement and satisfaction of all claims of the said International Railroad Company, and of the said International & Great Northern Railroad Company, against the state for bonds under the provisions of the ninth section of the aforesaid act of August 5, A. D. 1870, there is hereby granted to the said last named company, its successors and assigns, twenty sections of six hundred and forty acres each of the unappropriated public lands of the state, for each mile of railroad which has been and which may hereafter be constructed, pursuant to the authority conferred by the said act of August 5, A. D. 1870. And the said company, its successors and assigns, shall have the right to locate the said lands, as headright certificates were formerly located, without being under obligation to locate alternate sections for the state; and the said lands and the certificates issued therefor are hereby exempted and released from all state, county, town, city, municipal and other taxes for the period of twenty-five years from the date of the respective certificates issued therefor. And the said railroad company and its successors and its and their capital stock, rights, franchises, railroads constructed and to be constructed, pursuant to the said act of August 5, A. D. 1870, and this act, rolling stock and all other property which now is or hereafter may be owned or possessed by said company or its successors, in virtue of the said act of August 5, A. D. 1870, is hereby exempted and released from all state, county, town, city, municipal and other taxes for a period of twenty-five years from the 5th day of August, A. D. 1875, except county and municipal taxes in such counties, cities and towns as have donated their bonds to aid in the construction of said railroad; but this exception shall not remain in force in favor of any county, city or town which, having thus donated bonds, shall make default

in the payment of either the interest or principal thereof; *provided*, that this exemption from taxation shall not be held or construed to include or apply to the lands or railroads which, at the time of the consolidation hereinbefore recited, belonged to the Houston & Great Northern Railroad Company, or which has since been or hereafter may be constructed or acquired under its charter; *provided*, nothing in this act contained shall be so construed as to exempt from taxation any lands to which the company may be entitled by virtue of the charter of the Great Northern Railroad Company, or the franchise, road-bed, rolling stock, or any property acquired, or hereafter to be acquired, by virtue of the charter of the Great Northern Railroad Company."

The first section of the act here set out recognizes the existence of the International & Great Northern Railroad Company, and that it is the corporation in which had been practically merged the corporate existence of the International Railroad Company and the Houston & Great Northern Railroad Company; and it further evidences that the legislation therein had by way of compromise, settlement and satisfaction was for a claim or demand of the International Railroad Company, based upon the act of August 5, 1870.

That the International & Great Northern Railroad Company was a necessary party to any settlement to be made, resulted from the fact that it then held all of the rights, franchises and property of the two corporations whose existence was merged in its own, and by and through which alone the rights and claims resulting to the International Railroad Company under its original charter could be asserted or settled.

The act further evidences that the exemption from taxation of property belonging to the consolidated company was to be restricted narrowly and closely to such property as it held, or might hold, under the charter originally granted to the International Railroad Company, and that the benefits otherwise to the consolidated company should be for and on account of acts which the International Railroad Company had already performed under its charter, or such as the consolidated company might perform after the date of the act, under that charter or the act now under consideration.

That the benefits to be received under the act were to result only from such acts as had been performed under the charter of the International Railroad Company, of date August 5, 1870, and under so much of that charter as was left applicable to the consolidated company, which benefits include the exemption of designated property, rights and franchises, is strong evidence of the intention of the legis-

lature only to authorize the taxation of such property by such counties, cities and towns as had aided the company by donation of bonds to perform the acts which resulted in the creation of the things to which the exemption applied.

If it had been the intention of the legislature to subject to taxation, by counties which had donated bonds to *either* the International Railroad Company. or the Houston &. Great Northern Railroad Company, the property acquired or to be acquired under the charter of the former company of date August 5, 1870, the language of the act would properly have been, in effect, as follows: "And the said International & Great Northern Railroad Company and its successors, and its and their capital stock, rights, franchises, railroads constructed and to be constructed pursuant to the act of August 5, 1870, and this act, rolling stock and all other property which now is, or hereafter may be, owned or possessed by the International & Great Northern Railroad Company or its successors in virtue of the said act of August 5, 1870, is hereby exempted and released from all state, county, town, city, municipal and other taxes for a period of twenty-five years from the 5th day of August, 1875, except county and municipal taxes in such counties, cities and towns as have donated their bonds to aid in the construction of such *railroads* as have been constructed under the act of August 5, 1870, incorporating the International Railroad Company, *or* the act of 22d day of October, 1866, incorporating the Houston & Great Northern Railroad Company."

This language would show that the legislature intended just what the appellees contend was the intention of the legislature in the use of the language contained in the act under consideration.

The object sought to be accomplished by the act (which was certainly nothing more than a settlement of such claims as the consolidated company asserted through the original charter of the International Railway Company, as well as the situation and number of lines of railway owned by the consolidated company at the time the act of March 10, 1875, was passed) may be looked to for the purpose of ascertaining the true intention of the legislature.

The charter of the International Railroad Company authorized the construction of a railway by a continuous line, from some point on Red river, as nearly opposite the town of Fulton, in the state of Arkansas, as practicable, across the state of Texas, by way of the cities of Austin and San Antonio to the Rio Grande, at some point at or near Laredo; of this about two hundred miles of railway had been constructed, embracing that portion of the road now sought to

be subjected to taxation, which had been constructed prior to the time Anderson county donated bonds to the Houston & Great Northern Railroad Company.

The last named company was authorized to construct a railway, commencing at the city of Houston and running northward to Red River, connecting with the Memphis & El Paso Railroad as near Clarksville as practicable, passing as near to certain designated towns as practicable, Palestine not being one of the towns named. That company did complete its railway to Palestine, in Anderson county, by the 31st December, 1872, in accordance with an agreement made before that date between the company and the county of Anderson, by which the county had agreed, in consideration the railway should be so constructed, to donate to the company the bonds of the county, which was subsequently done.

At Palestine the two roads intersected, the lines of each, under their charters, being separate and distinct, with nothing in common between them, either as to locality or *termini*, except that the line of one would cross the other.

They were separate and distinct "railroads," as the word "railroad" is aptly defined by the judge who tried the cause, *i. e.*, "the road-bed, right of way, track, rolling stock and appurtenances actually constructed and in operation as a public highway."

This distinctive character of separate railroads did not depend upon whether there was one common ownership or not, and the consolidation of the two railway companies did not render that which was, before consolidation, two railroads, one, either in fact or in law.

The act in question clearly excepts from its operation, in so far as it exempts from taxation property or other things acquired under the charter of the International Railroad Company or under authority of this compromise act, only such counties and towns as have "donated their bonds in aid of the construction of *said railroad*," which could not have meant such counties or towns as had so aided in constructing *either* one of two railroads, which then had a common ownership; for the language of the act limits the exemption in favor of counties and towns to such as had donated bonds to aid in the construction of *said railroad*.

The words "said railroad" mean some railroad aforementioned in the act, and are evidently intended to render certain, define or point out to what railroad aid must have been given to entitle a county or town to exercise the right of taxation over such property or rights as had been acquired under the charter of the International Railroad Company.

As before said, the words "railroad company" do not mean the same thing as the word "railroad." The former may exist without the latter, and even the latter without the former. The one applies to the agency which may construct or own; the other to the thing constructed or owned.

The act recognizes the ownership of the International & Great Northern Railroad Company of the railroads constructed by the two consolidated companies, but it keeps carefully in view the thing as distinguished from the owner.

Twenty sections of land to the mile are granted by the act to the consolidated company, and it is exempted from taxation, but neither the land nor exemption thereof from taxation were given for any part of the railroad constructed by the Houston & Great Northern Railroad Company, nor by the consolidated company under the charter powers of the Houston & Great Northern Railroad Company; but it was expressly given for each mile of railroad constructed by the International Railroad Company or by the consolidated company under the charter powers of the International Railroad Company.

In every instance except one in which the word "railroad" is used in the section of the act under consideration, or in the preamble thereto, direct reference is made to such railroad as had been or might be constructed under the charter of the International Railroad Company, and to none other. The first time the word is found is in the preamble, the second clause of which is as follows: "Whereas, by the ninth section of said act it is claimed the state of Texas obligated itself to donate and grant to said company [the International Railroad Company] the bonds of the state of Texas to the extent and amount of $10,000 per mile for each mile of *railroad* constructed under said charter."

In the first section of the act it first occurs in the following clause: "There is hereby granted to the said last named company [the International & Great Northern Railroad Company], its successors and assigns, twenty sections of six hundred and forty acres each of the unappropriated public lands of the state, for each mile of *railroad* which has been and which may hereafter be constructed pursuant to the authority conferred by the said act of August 5, A. D. 1870."

Here, as in the preamble, there can be no doubt as to what railroad is meant, and thus in that part of the act by which the state undertakes to confer upon the consolidated company a benefit for a thing done or to be done under a named power.

Another connection in which the word occurs in the act is the

following: "And the said railroad company and its successors, and its and their capital stock, rights, franchises, *railroads* constructed and to be constructed, pursuant to the said act of August 5, A. D. 1870, and this act, rolling stock and all other property which now is or hereafter may be owned or possessed by said company [the International & Great Northern Railroad Co.] or its successors, in virtue of said act of August 5, A. D. 1870, is hereby exempted and released from all state, county, town, city, municipal and other taxes, for a period of twenty-five years from the 5th day of August, A. D. 1875, except county and municipal taxes in such counties, cities and towns as have donated their bonds to aid in the construction of said *railroad*."

This clause contains the word twice; in the first instance it is used in the plural, in that part which creates the exemption, and there can be no doubt as to what railroad is there meant, for the act under which it must be or have been constructed is expressly named. It appears also in that part of the clause which creates or declares the exception to the exemption from taxation.

That the exemption from taxation under this clause applies solely to a railroad or railroads which had been constructed under the charter of the International Railroad Company, or might be constructed thereafter under the powers of that charter, or of *this* act, and not to such as had been or might be constructed under the charter of the Houston & Great Northern Railroad Co., cannot be denied without disregarding the plain import of the language used. This being true, it would require a strained course of reasoning and a disregard of the ordinary rules of construction, to justify the holding that the word *railroad* used in the same clause, in creating the exception to the exemption from taxation meant something other than was meant by the same word used in creating the exemption.

The word occurs again in the fourth section of the act in connection with the rate of construction required to preserve the right to the land granted by the act, which fixes its meaning as there used beyond all question.

The only instance in which the word is used to designate a railroad constructed under the charter of the Houston & Great Northern Railroad Company occurs in that clause of the first section which expressly excludes lands from the exemption from taxation which may be, or have been, acquired under that charter separate and apart from the true construction to be placed upon the language of the act in question, which was, as its title expresses, "An act for the relief of the International Railroad Company." Relief having

been denied by the courts, it is more reasonable to believe that it was the intention of the legislature to withdraw from counties, cities and towns, unless they had aided by the donation of bonds the construction of that road, the right to tax the property in question for the same reason, and for none other, than induced the state to exempt it from state taxation. The manifest reason for doing that was to make a settlement of a claim which the company was asserting through rights claimed under the charter of the International Railroad Company, having no connection whatever with the charter of the Houston & Great Northern R. R. Co., nor with anything which any county, city or town had done to aid in the construction of that road.

We therefore hold that, as it does not appear that Anderson county had donated bonds to aid in the construction of the railroad sought to be taxed, it has no right to collect the tax. The fact that some or even all of the bonds issued to the Houston & Great Northern R. R. Co. may have gone into the possession of the consolidated company cannot change the rule, for they were received as a part of the property of the company to which they had been issued, and the consideration for them had been fully paid by that company; nor can the fact that no county, city or town had aided, by the donation of bonds, the construction of the International Railroad, change the construction of the act, which must be construed by its language and the subject matter of the contract which was consummated through it, rather than by conjecture as to what members of the legislature may have known outside of the charters of the companies.

The first cross assignment of error presents the question as to whether or not the acts of August 5, 1870, and March 10, 1875, were unconstitutional in so far as they exempted property from taxation. The constitution then in force gave power to the legislature to exempt property from taxation by a law receiving the assent of two-thirds of the members of both houses. That they were so passed not being questioned, they must be held valid. Sec. 19, art. XII, Constitution of 1870; Cooley on Taxation, 52–56, and citations.

The second and third cross assignments seek an adjudication as to whether or not the act of August 5, 1870, was not in conflict with sec. 17, art. XII, and sec. 6, art. XII, of the constitution then in force.

An examination of these questions is not called for, or necessary in the decision of this case, for the rights of the parties depend upon

the act of March 10, 1875; and it is sufficient to say that the legislature was of the opinion that the act of August 5, 1870, created in the company such rights as the state ought to settle, and under the act of March 10, 1875, they were settled, and with that settlement the defendants in this case have no concern. We do not, however, wish to be understood to question the validity of the act of August 5, 1870, or as giving any opinion in respect to the objections made to it.

It is urged that the court erred in holding that the act of March 10, 1875, gave a valid exemption from taxation to the property sought to be taxed. In this the court did not. err. That act, and its acceptance by the company as a settlement of all matters between it and the state growing out of the act of August 5, 1870, created a valid and binding contract sustained by a valuable consideration, and was irrepealable. Cooley on Taxation, 52–56, and citations; Humphrey v. Pegues, 16 Wall., 249; Tomlinson v. Branch, 15 Wall., 460; Morawetz on Corporations, 430, and citations.

Nor did the court err in holding that the consolidation of the two companies on the 27th September, 1873, did not remove the exemption from taxation given by the act of August 5, 1870; nor did it err in holding that the sales of the 13th of October, 1879, did not defeat the exemption from taxation given by the act of March 10, 1875. The act itself declared that upon its acceptance by the company in the manner provided, it "shall also be held to constitute an irrepealable contract and agreement between the state and the said company, its *successors and assigns.*" Central Railroad v. Georgia, 92 U. S., 665; Tomlinson v. Branch, 15 Wall., 460; Humphrey v. Pegues, 16 Wall., 247; Chesapeake & Ohio R. R. Co. v. Virginia, 94 U. S., 718; R. S., 4260.

For the error of the court in dissolving in part the preliminary injunction, the judgment of the court below must be reversed, and a judgment will be here entered perpetuating the preliminary injunction granted in the case, and giving costs of this court and of the court below in favor of the appellant against the appellees; and it is accordingly so ordered.

## On Motion for Rehearing.

This cause prior to its decision received that careful consideration which its importance demanded, as has the motion for rehearing, and we see no good reason for changing our views as to the law of the case, or its proper disposition. Counsel for appellee, in the original presentation of the case, and in their brief and argument

for rehearing, have exhibited a commendable degree of industry, research and perseverance.

We are asked, if the judgment of the court below must be reversed, then to remand the cause on account of newly discovered evidence, which it is thought by counsel for appellee might change the result upon another trial. We have examined that which is claimed to be newly discovered testimony, set out in the motion, and had it been introduced on the trial of the cause we cannot see that it would have changed the result in the slightest degree.

The statute provides that, "Whenever the judgment or decree of the court below shall be reversed, the supreme court or court of appeals shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or the damages to be assessed, or the matter to be decreed, is uncertain; in either of which cases the cause shall be remanded for a new trial in the court below." R. S., 1048.

The transcript presents all the facts necessary to be ascertained, and leaves nothing uncertain; but upon the contrary, few cases bear evidence of a more careful preparation, trial and hearing than does the present; the findings of conclusions of fact and of law, by the judge who tried the case, are peculiarly clear and exhaustive.

Under such state of case our duty in the matter is plain and imperative; and besides, motions in the nature of motions for new trial, based upon newly discovered testimony, cannot be entertained in this court; otherwise we would hear cases never made in the court below, exercise an original jurisdiction, and engraft upon the practice a mode of procedure which perhaps no appellate tribunal, not authorized to try causes *de novo*, has ever felt authorized to adopt.

The motion for rehearing is refused.

　　　　　　　　　　　　　　　　　　　MOTION REFUSED.

[Opinion delivered January 19, 1883.]