## HOUSTON BELT & TERMINAL RY. CO. v. CLARK, Secretary of State, et al.

### No. 8725.

Court of Civil Appeals of Texas. Austin.

Nov. 23, 1938.

Rehearing Denied Dec. 21, 1938.

Andrews, Kelley, Kurth & Campbell and T. A. Slack, all of Houston, for appellant.

Wm. McCraw, Atty. Gen., and John J. McKay and Charles N. Avery, Jr., Asst. Attys. Gen., for appellees.

BLAIR, Justice.

This appeal involves the construction of Art. 7084, R.S.1925, as amended in 1931, Vernon's Ann.Civ.St. Art. 7084, and particularly Subdivision (C) thereof. Subdivision (A) provides that, "except as herein provided, every domestic and foreign corporation * * * chartered or authorized to do business in Texas, shall * * * pay * * * a franchise tax," and provides the method of determining the amount of the tax. Subdivision (C) reads as follows: "Provided, however, that this Act shall not apply to corporations organized as terminal companies not organized for profit, and having no income from the business done by them."

Appellant, Houston Belt & Terminal Railway Company, contends: (1) That it is a terminal company; (2) that it is not organized for profit; and (3) that it has no income from the business done by it, and that it is therefore within the exempted classification of Subdivision (C). Appellees, the Attorney General, the Secretary of State, and the State Treasurer, admit that appellant is a terminal company, but

contend: (1) That it is organized for profit; and (2) that it has an income from the business done by it; and that it does not therefore come within the exempted classification of Subdivision (C), and is liable for the franchise taxes, which by this suit it sought to enjoin the collection of, and for which the trial court held it liable.

The evidence sustains the findings and conclusions of the trial court that appellant terminal company is "organized for profit" and has an "income from the business done by" it, within the meaning of these quoted terms as used in the taxing act; and it is therefore liable for the franchise taxes in suit.

Four railroad companies operating in Texas, herein referred to as the tenant lines, incorporated appellant under the laws of Texas in 1905, subscribing and paying for its capital stock of $25,000 in equal parts, for the primary purpose of furnishing themselves convenient joint terminal facilities in and near the city of Houston, and with all rights and powers now conferred by Art. 6549, R.S.1925, and by Chapters 6 and 7 of Title 112, R.S.1925, Vernon's Ann.Civ.St. arts. 6316 et seq., 6341 et seq., relating to railroads. To effectuate its primary purpose, appellant obtained in 1907, a loan of $5,000,000 from Central Trust Company of New York, and secured it by a mortgage lien on all of its properties, the note and mortgage being executed by appellant alone. As a part of the loan agreement and as additional security therefor, each of the tenant lines pledged its capital stock of appellant, with certain default provisions, to secure their agreement to pay in equal parts the annual interest and sinking fund requirements of the loan, which payments were to and have been made by the tenant lines directly to the trust company for the benefit of the appellant terminal company. The stock trust agreement also provided that the trust company shall be entitled to the dividends of appellant's stock, which shall be applied against any payment in arrears due by any tenant line for annual interest or sinking fund due on either the "Terminal Agreement" or loan, or on the "Stock Trust Agreement" of the tenant lines. No dividends have ever been paid on this stock. The annual interest and sinking fund payments have been regularly made for thirty years and have reduced the original $5,000,000 indebtedness of appellant to less than $3,700,000; and such payments will eventually retire the entire indebtedness, which is in accordance with the terms of the contract and in contemplation of the tenant lines and appellant, and which had resulted in decreasing the liabilities of appellant and in increasing its assets to the extent of over $1,300,000 at the time of the trial as found by the trial court; and which amount it found to be profits and especially so when viewed in the light of the agreement between the tenant lines and appellant with regard to payment by the tenant lines of its fixed costs and a part of its operating expenses. That is, in addition to and independently of the agreement of the tenant lines to pay the annual interest and sinking fund requirements to amortize the $5,000,000 indebtedness of appellant, thereby leaving its properties unencumbered, the tenant lines also contracted with appellant to pay in equal parts its fixed cost, taxes, rents, etc., and also a part of its operating expenses. But knowing that under the laws of Texas (now Art. 6445, R.S. 1925) appellant terminal company would be required by the Railroad Commission to perform terminal services for other railroads demanding such services, and to make such charges therefor as might be fixed by the Railroad Commission or by the Interstate Commerce Commission, the tenant lines and appellant agreed that such income from outside railroads would be used by appellant to defray its current operating expenses, and that any remaining deficit for operating expenses would be paid monthly by the tenant lines, the amount to be paid by each tenant line to be determined on a user basis of the tenant line for the current month. The annual operating expenses of appellant (exclusive of interest, sinking fund, and other fixed charges) have averaged approximately $1,700,000, and its income from charges made under order of the Railroad Commission for services to other railroads, such as "switching, revenues and incidentals, and income from rent," has averaged approximately $190,000 annually. And each month the tenant lines have paid the deficit operating expenses, each paying its pro rata share as determined on a user basis. With these facts, which are in substance the findings of fact by the trial court, appellant does not disagree; but contends that they do not sustain its conclusions of law that appellant is "organized for profit" and has an "income from the business done by" it, within the meaning of these quoted terms as used in Subdivision (C) of the taxing

act. With these contentions we cannot agree.

Manifestly, appellant terminal company was organized and incorporated as a separate and independent corporation from the tenant lines that purchased all of its capital stock and for whose use and convenience it was primarily organized. As such corporation it is entitled to all of the rights, privileges, and powers conferred upon it by statute, and is burdened with the duties required of it by statute. The parties to its organization knew that it would be required under the statute to permit the use of its terminal facilities and services by all railroads demanding such services; and that for such use of its facilities and services it would receive the charges or consideration fixed by the Railroad Commission. The tenant lines and appellant, therefore, agreed that such charges or income would be used to defray operation expenses as far as possible; and that the remainder of the operation expenses would be paid by the tenant lines, calculated on a monthly user basis, in consideration of appellant's furnishing them terminal facilities and services, which the trial court found were "for the greater economy and convenience" of such tenant lines. Thus under the law and by specific contracts appellant terminal corporation has provided, as it had the right to do, for all of its initial costs or capital, interest on its indebtedness, all fixed costs and operating expenses, and for a sufficient sinking fund to eventually retire all of its indebtedness, thus leaving its valuable property free of debt. So considering appellant as a separate corporation, which must be done because it has so incorporated itself, the various amounts which the tenant lines have contracted to pay to it or for its benefit in consideration of the terminal services furnished them by appellant, are not different in the sense that same are profit and income from the business done, from the charges paid to appellant by all other railroads for the use of its terminal facilities and services; and since the sum total of all such revenue or income, less all expenses, is profit, which appellant's charter authorized it to make, it must be held to be "organized for profit" within the meaning of the term as used in the taxing act. And since such charges and payments to appellant or for its benefit are in consideration of the use of its terminal facilities and services, they constitute as a matter of law "income from the business done by" it within the meaning of that term as used in the taxing act.

The exempting statute (Subdivision (C) does not attempt to define nor limit the phrases or terms, "not organized for profit" and "having no income from the business done by them." The two key words involved are "profit" and "income", and since the act does not define them singly, nor the phrases in which they are used, they must be given the meaning ordinarily attributed to them.

Profit is usually regarded as "the gain made on any business or investment when both the receipts and payments are taken into consideration." 6 Words and Phrases, First Series, p. 5659. The term "profit" as applied to a business organization is held to include and cover benefits of any kind in excess of the value of costs or expenses, and profit in business has been held to include all gain, advance in value of assets, good will, and dividends, in excess of or beyond expenditure. 6 Words and Phrases, First Series, p. 5659. Applying these provisions to appellant's business as actually organized and operated, there can be no question but that it is such a business as can make a profit, and that under its financial structure and operation it has gradually decreased its liabilities and increased its assets. That is, from all of its income appellant has reduced its indebtedness from $5,000,000 to $3,700,000, without having diminished its assets in proportion to its debt reduction; and under its contracts and the income therein provided for, and other income paid by other railroads, it will eventually retire all of its indebtedness, and have left over and beyond its expenses all of its valuable assets. And since the sum total of appellant's operations shows that its income from all sources has been such as to reduce its indebtedness and has increased the value of its assets over $1,300,000, it is "organized for profit" within the meaning of that term as used in the taxing act.

The term "income" ordinarily means that "which comes into or is received by any business or investment of capital, without reference to the outgoing expenditures." 4 Words and Phrases, First Series, p. 3504. Income is the "gain which proceeds from property, labor, or business." 1 Bouv.Law Dict., Rawle's Third Rev., p. 1527. The statutes use the word "income" or the phrase, "income from the business done by

them," in the sense of any income, as distinguished from net income. The evidence is undisputed that appellant has received about $190,000 annually for services rendered railroads outside its organization, and for similar services has received more than a million dollars annually from the tenant lines.

No case has construed the statute in question, but the case of Houston Belt & Terminal Ry. Co. v. United States, 5 Cir., 250 F. 1, held in substance that appellant was organized for profit and had a "net income" subject to the Corporation Excise Tax Act of August 5, 1909, C. 6, 36 Stat. 112, which provides: "Sec. 38. That every corporation * * * organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations * * *."

The court reviewed appellant's charter set-up and financial structure and its operations, and held that if it be conceded that appellant was organized merely to provide a convenient joint agency for the performance of certain duties for the carriers owning its stock, still it was organized for profit, and that since the title to the property vested in appellant subject to the mortgage, and that the interest payments by the tenant lines were for its benefit, same should be treated as income within the meaning of the taxing act which imposed the excise tax measured by appellant's net income as therein defined; and that [page 4]: "It may be that the tenant companies organized the terminal company to provide a convenient joint agency for the performance of certain of their duties as carriers, and with no view to profit to be derived from its organization. It was, however, legally organized as a corporation, capable of earning and paying dividends to its stockholders, and the fact that it has not done so does not make it the less a corporation engaged in business and organized for profit, within the meaning of the corporation tax law. Profit from its organization and operation could result to its stockholders in other ways than in dividends.

If the tenant companies chose to avail themselves of an agency, owned by them, which did business in a corporate capacity, then under the act of August 5, 1909, they became liable through it for the payment of an excise tax for this privilege."

Appellant contends that the part of said opinion relied upon by appellees is pure obiter dictum; and that the decision is out of harmony with later decisions of Federal Courts construing the income tax statutes. As to such alleged conflicts we have made no search, because they are not material. Such decisions are not binding on this court. However, we regard the reasonings of the court toward its conclusions that appellant is organized for profit and that it has an income, as sound and as being persuasive of our conclusions that appellant is "organized for profit" and that it has an "income from the business done by" it within the meaning of Subdivision (C) of our statute.

Our statute does not tax "income," which is sometimes construed to mean "net income" in taxing acts, but merely provides that the presence or absence of income shall in part determine liability for the tax in suit, which is levied upon capital structure; and since the capital stock of appellant has been hypothecated by it and the tenant lines so as to authorize its sale, and since the purchaser thereof may control and operate appellant so as to make profits, income and dividends on capital stock, we must conclude that appellant has not shown that it is "not organized for profit," nor as "having no income from the business done" by it within the meaning of such terms as used in the taxing act, and under the settled rule that all statutory exemptions from taxation shall be strictly construed with the burden on the taxpayer claiming the exemption of proving facts showing that the complaining taxpayer does come within the exempted classification. Gulf States Utilities Co. v. State, Tex.Civ.App., 46 S.W.2d 1018; City of San Antonio v. Y. M. C. A., Tex. Civ. App., 285 S.W. 844; City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 981; McCallum v. Associated Retail Credit Men of Austin, Tex. Com.App., 41 S.W.2d 45.

The judgment of the trial court is affirmed.

Affirmed.