**MID–AMERICAN OIL & GAS, INC., Appellant,**

v.

**Mary BORCHERS et al., Appellees.**

No. 5390.

Court of Civil Appeals of Texas, Eastland.

March 20, 1980.

Rehearing Denied May 1, 1980.

Jerry P. Jones, Ralph I. Miller, Thompson & Knight, Dallas, Armond Schwartz, Hallettsville, for appellant.

William R. Choate, Baker & Botts, Houston, Terrell S. Mullins, Hallettsville, for appellees.

1. The Borchers family consists of Mary Borchers, individually and as Independent Executrix of the Estate of William Borchers, her deceased husband, and her sons: William H. Borchers, a lawyer; Charles L. Borchers, a doctor; Otto R. Borchers, a rancher; and Marion J. Borchers, a lawyer.

2. The Gas Purchase Contract was executed on June 8, 1973, by Bay Pipeline, Inc., as "Buyer" and by Gerald R. Hill d/b/a Hill Production Co., Edward C. Wilson, Jr. and Wayne S. Davis as "Seller." It covered the natural gas produced from 29 gas wells on the Borchers family's property.

DICKENSON, Justice.

The Borchers family [1] sued Mid-American Oil & Gas, Inc. for an alleged underpayment of royalties due on natural gas under the gas royalty clause of leases executed by the Borchers family, for an accounting, for exemplary damages, for attorney fees, and for prejudgment and postjudgment interest. Mid-American contended that the Borchers family was paid in full for all of their gas royalty interests under the terms of a Gas Purchase Contract.[2] Following a lengthy trial, the jury returned its verdict in favor of Mid-American. The trial judge disregarded all but one of the jury's findings and rendered judgment non obstante veredicto for the Borchers family against Mid-American Oil & Gas, Inc. for the sum of $4,445,526.00 as additional gas royalties due and $767,228.38 as prejudgment interest. Mid-American appeals. We reverse and render.

The verdict of the jury may be summarized as follows:

### SPECIAL ISSUE NO. 1

The jury refused to find that Mid-American failed to pay royalties to the Borchers family based upon the amounts realized by Mid-American on gas produced from lands covered by the Borchers family's leases and "sold at the wells," from July 1, 1974, to December 31, 1977.

### SPECIAL ISSUE NO. 2

A reasonable charge for compressing and transporting gas from the Borchers

Bay Pipeline, Inc., was a wholly owned subsidiary of Mid-American until December 3, 1974, when a corporate reorganization was undertaken. Mid-American later succeeded to Bay's rights as "Buyer" under this agreement.

Hill-Davis-Wilson's rights as "Seller" passed to Mid-American, effective July 1, 1974, when their leases were acquired by Mid-American.

The Borchers family sought to protect the benefit of a then favorable price for natural gas by becoming parties to the pricing provisions of the Hill-Bay Gas Purchase Contract. This was accomplished by a Letter Agreement dated October 2, 1974, which was signed by all of the Borchers.

family's leases to the pipeline delivery point is 1½¢ per MCF.

## SPECIAL ISSUE NO. 3

This damage issue was conditionally submitted, and no answer was required in view of the "No" answer to issue 1.

## SPECIAL ISSUE NO. 4

The jury refused to find that Mid-American failed to pay royalties to the Borchers family "based upon the market value at the well" of gas produced by Mid-American from the Borchers family's leases from July 1, 1974, to December 31, 1977.

## SPECIAL ISSUE NO. 5

This damage issue was conditionally submitted, and no answer was required in view of the "No" answer to issue 4.

## SPECIAL ISSUE NO. 6

The jury refused to find that Mid-American misrepresented, in the monthly royalty statements to the Borchers family, the prices at which Mid-American sold the gas produced from the Borchers family's leases.

## SPECIAL ISSUE NO. 7

This issue on reliance was conditionally submitted, and no answer was required in view of the "No" answer to issue 6.

## SPECIAL ISSUE NO. 8

This exemplary damage issue was conditionally submitted, and no answer was required in view of the "No" answer to issue 6.

## SPECIAL ISSUE NO. 9

The jury found that the Borchers family, by their conduct and by signing the October 2, 1974, letter agreement, "agreed with Defendants to accept royalties on the basis of the prices set forth" in the Gas Purchase Contract.

## SPECIAL ISSUE NO. 10

The jury found that the Borchers family, by their conduct and by signing the October 2, 1974, letter agreement, "are estopped from denying that royalty payments are to be based on the prices set forth" in the Gas Purchase Contract.

## SPECIAL ISSUE NO. 11

The jury found that the Borchers family, by their conduct and by signing the October 2, 1974, letter agreement, waived the right to claim royalties based on prices higher than those in Article IX of the Gas Purchase Contract.

## SPECIAL ISSUE NO. 12

The jury found that Mid-American ratified the October 2, 1974, letter agreement.

## SPECIAL ISSUE NO. 13

The jury found that the parties to the October 2, 1974, letter agreement intended to benefit Mid-American by signing that agreement.

Mid-American has briefed 34 points of error. The first three points will be sustained, and we need not discuss the other 31 points of error. Points 1, 2 and 3 contend that the trial court erred in granting judgment non obstante veredicto for the Borchers family and in refusing to enter a judgment on the verdict that the Borchers family take nothing. We agree that the October 2, 1974, letter agreement and Article IX of the Gas Purchase Contract constituted an unambiguous contract which established the gas prices for the purpose of calculating the disputed royalty payments. We also agree that there is evidence, which is legally and factually sufficient, to support the jury's answer that the Borchers family "agreed with Defendants to accept royalties on the basis of the prices set forth" in Article IX of the Gas Purchase Contract. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The Cross Points of the Borchers family have been considered, and they are overruled. The Borchers family also perfected a separate appeal, contending that the trial court erred in not allowing a recovery for additional sums of money. These points of error have been considered, and they are overruled.

Our Supreme Court stated the rule as to the construction of written contracts in *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1968), as follows:

> It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. . . . In the usual case, the instrument alone will be deemed to express the intention of the parties, for it is objective, not subjective, intent that controls. . . . We are to take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction . . .. (citations omitted)

See also *Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952).

■ The circumstances shown by the record are that the Borchers family became concerned with securing the benefits of a gas price which was the highest price paid in that area for natural gas in 1974. They knew that the gas purchaser, Bay Pipeline, Inc., was a wholly-owned subsidiary of Mid-American and that Mid-American had acquired their leases, thereby becoming the seller under the Gas Purchase Contract. They wanted to be sure that Mid-American, as seller, and its subsidiary as purchaser, did not renegotiate the contract to their detriment. They wanted to protect their right to receive royalty payments on the basis of the price stated in that contract. Consequently, the Borchers family insisted upon, and joined in the execution of, the Letter Agreement of October 2, 1974, which provided that they ". . . will be included as a party Seller in connection with the pricing paragraph, being Article IX on page 20, of said Contract." The pricing paragraph reads as follows:

1. The price to be paid by Buyer to Seller for all gas delivered hereunder and for gas which Buyer is required to pay for even though it is not taken shall be as follows:

Sixty five cents (65¢) per MCF for gas delivered or to be paid for during the one (1) year period beginning on the first of the month in which the initial delivery is taken or on September 15, 1973 whichever occurs first provided however that if Seller is unable to deliver to Buyer an average daily quantity of 5,000 MCF per day over the period of two years beginning with date of initial deliveries hereunder then said price shall be retroactively reduced to fifty five cents (55¢) per MCF and any amounts paid by Buyer to Seller in excess of the applicable price shall be then due and payable to Buyer.

The applicable price as provided for above shall increase two cents (2¢) per MCF at the end of each one (1) year period during the term hereof.

On September 15, 1978 and sixty (60) days prior to the end of each five (5) year period thereafter during the term thereof, Seller may determine the "Prevailing Price" as herein defined, and submit same to Buyer along with suitable supporting evidence as to the origin of such prevailing price, and if the prevailing price is greater than the price and escalation being paid under this Agreement, then at the option of Seller, the price and escalation to be paid by Buyer to Seller for gas hereunder shall be increased, effective on the date of normal escalation, to the prevailing price, which prevailing price shall become and remain effective during the applicable period in lieu of the price provided in Paragraph 1 hereof.

1. As used herein the term "prevailing price" shall mean and refer to the average of the three (3) highest bona fide contract field prices, specified in Seller's notice and payable during the applicable period, including the escalation provided for in those contracts, for

gas produced and delivered from Texas Railroad Commission District #2 and Texas Railroad Commission #4 to intrastate pipeline purchasers, including Buyer, but excluding this Contract. In determining the prevailing price each sale shall be appropriately adjusted for variations, if any, between the provisions of this contract and the contracts under which the prevailing prices are determined taking into account quality and quantity of gas covered by each contract and the terms and specifications contained in each contract.

The price of 65¢ per MCF of natural gas (plus the increase of 2¢ per MCF each year and the redetermination of price provisions at the end of each five year period) was above the current market value in 1974 when the Borchers family insisted upon becoming a party to the pricing paragraph of the Gas Purchase Contract. When they secured these benefits for themselves, they also became bound to sell their royalty gas for the prices which were then agreed upon.

Subsequently, the market price of natural gas increased from below the contract price to considerably more than the contract price. The Borchers family demands royalty payments under the original terms of their leases. When the Court interprets the pricing paragraph which was incorporated into the Letter Agreement, the controlling language reads as follows:

> The price to be paid . . . to Seller (the Borchers family) for all gas delivered hereunder . . . shall be . . Sixty five cents (65¢) per MCF for gas delivered . . . (plus the 2¢ per MCF annual increases).

This unambiguous agreement by the Borchers family as to the pricing provisions controls their rights to the valuation of the natural gas sold under that agreement. They must take the burdens, as well as the benefits, of the bargain which they made.

As an alternative basis for reversing the judgment non obstante veredicto and rendering judgment that the Borchers family should take nothing by their suit, Mid-American secured findings by the jury that the Borchers family, by their conduct and by signing the October 2, 1974, Letter Agreement, agreed with Defendants to accept royalties on the basis of the prices set forth in the Gas Purchase Contract's Article IX. These royalty payments were made.

■ In reviewing a judgment non obstante veredicto, an appellate court must consider only the evidence and inferences which support the jury's findings, disregarding all evidence and inferences to the contrary. *Miller v. Bock Laundry Machine Company*, 568 S.W.2d 648 (Tex.1977); Tex. R.Civ.P. 301.

■ The jury found, and there is evidence to support its finding, that the Borchers family agreed with Defendants (Mid-American and its affiliates) to accept royalties on the basis of the prices set forth in the Gas Purchase Contract. The evidence shows that the Borchers family insisted upon becoming a "party Seller" to this agreement. There are no findings of fraud or misrepresentation. There is evidence that the Borchers family was aware of the possibility of the contract involving burdens as well as benefits. There is also evidence that the agreement was supported by consideration, that it was the product of extensive arms-length negotiation, and that the Borchers family knew it was dealing with Mid-American and not merely with Bay Pipeline, Inc.

■ The Borchers family contends that when Mid-American acquired the rights of both "Buyer" and "Seller" under the Hill-Bay Gas Purchase Contract,[3] any obligation to sell gas from the Borchers leases pursuant to that contract was extinguished as a matter of law. We disagree. They rely upon the Restatement of the Law, Contracts § 451 (American Law Institute 1932), which reads as follows:

> Where a person subject to a contractual duty, or to a duty to make compensa-

---

**3.** See footnote 2.

tion, acquires the correlative right in the same capacity in which he owes the duty, the duty is discharged.

Comment "b" to that section makes it clear that where the right is acquired by "less than all who owe the correlative duty jointly," there is no discharge. Here, the contractual duty to accept payment under the agreed price for gas was owed by the Borchers family as a "party Seller" to the agreement and also by Mid-American as assignee of the original "Sellers" under that agreement. The right of "Purchaser" to acquire the gas at the agreed price was acquired only by Mid-American. Since this was "less than all" who were subject to that obligation, it was not discharged.

The judgment non obstante veredicto is reversed, and judgment is now rendered that Mary Borchers, individually and as Independent Executrix of the Estate of William Borchers, Otto R. Borchers, William H. Borchers, Marion J. Borchers and Charles L. Borchers take nothing and that Mid-American Oil & Gas, Inc., recover all costs of suit.