**YOUTH CAMPS, INC., Appellant,**

v.

**COMFORT INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. 04–83–00058–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 12, 1986.

Rehearing Denied March 12, 1986.

John E. Bevil, San Antonio, for appellant.

Robert M. Huey, McCreary, Huey & Veselka, C. Richard Fine, Austin, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

CADENA, Chief Justice.

This case involves the right of Comfort Independent School District (District) to collect taxes on land and personalty in Kerr County owned by Youth Camps, Inc. (Youth Camps). Youth Camps admits that the district is entitled to judgment for the taxes for the tax years 1976–81 both inclusive, unless Youth Camps established that the property is exempt from taxation because Youth Camps is a "youth development association." A jury resolved all factual issues in favor of Youth Camps, but the trial court granted District's motion for judgment n.o.v. and rendered judgment for the recovery of the delinquent taxes, penalties, interest, attorney's fees and costs.

District's motion alleged that Youth Camps was not entitled to the claimed exemption because it had not "exhausted its administrative remedies" because it failed

to apply to the District's officers for an exemption and because there was no evidence to support the jury's answers to the special issues. The judgment purports to be based on the fact that Youth Camps failed to apply for an exemption.

On this appeal, Youth Camps presents a single point of error in which it attacks the judgment solely on the ground that the trial court erred in holding that an application for exemption was required.

Article VIII, § 2 of the Texas Constitution authorizes the Legislature to exempt from taxation land used exclusively and reasonably necessary "in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women, operating under a State or National Organization of like character." The authorized exemption was granted in 1937 by the enactment of TEX.REV.CIV.STAT. ANN. art. 7150, § 2a (Vernon 1960) (Repealed 1979), was in force during the tax years 1976–77–78–79. The claim of Youth Camps to exemption for the years 1980 and 1981 is governed by the current statute, TEX.TAX CODE ANN. § 11.19 (Vernon 1982).[1]

Section 2a of article 7150 (Vernon 1960) (Repealed 1979), exempted from taxation

... all property owned or used exclusively and reasonably necessary, in conduct-

---

1. TEX.TAX CODE ANN. § 11.19(a) (Vernon 1982) applicable to the years 1980 and 1982, exempts from taxation property owned by a "youth development association" which is used exclusively by such association and is reasonably necessary for its operation. Section 11.-19(d) provides that in order to qualify as a "youth development association," an association must

1) engage primarily in promoting the three-fold spiritual, mental, and physical development of boys, girls, young men, or young women;

2) be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain;

3) operate in conjunction with a state or national organization that is organized and operated for the same purpose as the association; and

4) by charter, bylaw, or other regulation adopted by the association to govern its affairs;

(A) pledge its assets for use in performing the association's youth development functions; and

(B) direct that on discontinuance of the association by dissolution or otherwise the assets are to be transferred to this state or to a charitable, educational, religious, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended.

ing any association engaged in the joint and threefold religious, education and physical development of boys and girls, young men and young women, operating under a State or National Organization of like character, and not leased or otherwise used with a view to profit other than for the purpose of maintaining the buildings and Association, and all endowment funds of the above mentioned religious institutions, not used with a view to profit but for the purpose of maintaining the Association and buildings in doing religious work and for the education or physical development of boys and girls, young men and young women ...

Prior to January 1, 1982, there was no statutory provision requiring the exemption claimant to apply to the taxing agency for an exemption as a youth development association. TEX.TAX CODE ANN. § 11.- 43 (Vernon 1982) which now provides that the exemption will be granted only if application for it is made at least one time, did not take effect until January 1, 1982, and has no application to this case which involves only years prior to 1982.

Whenever the legislature intended that an exemption should not be recognized until application for an exemption was made to administrative officials, it had no difficulty in expressing such intent. Thus, TEX.REV.CIV.STAT.ANN. art. 7150, § 1 (Vernon 1960) (Repealed 1979), as originally enacted in 1937, exempted from taxation the property of public school houses and churches, but expressly provided that schools and churches desiring the exemption "shall first" file an application for such exemption and, in explicit language, provided that all property not listed in such application would be subject to taxation. Since no such requirement was found in any statute applicable to the exemption which Youth Camps is claiming in this case prior to 1982, we do not feel free to read such a requirement into the statutes.

There are cases rejecting a claim of exemption in situations where no previous application for exemption had been made. But in such cases the statute or constitu-

tional provision granting the exemption expressly required the prior presentation of a written application for exemption. See, e.g., *Gragg v. Cayuga Independent School District*, 539 S.W.2d 861, 869–70 (Tex. 1976), *cert. denied*, 429 U.S. 973, 97 S.Ct. 478, 50 L.Ed.2d 581 (1977) and *Moore v. White*, 569 S.W.2d 533, 535 (Tex.Civ.App.— Corpus Christi 1978, writ ref'd n.r.e.), which involved the "exemption" granted to lands used for agricultural purposes in TEX. CONST. art. VIII, § 1–d. That constitutional provision expressly requires the filing of an application with administrative officials.

■ District argues that the exemption defense is not available to Youth Camps because TEX.REV.CIV.STAT.ANN. art. 7329 (Vernon 1960) (Repealed 1979), which was in effect during all years relevant to this case, expressly limited the defenses in a suit for the collection of taxes to those asserting (1) that the defendant was not the owner of the land at the time the suit was filed; (2) that the taxes sued for have been paid; or (3) that the taxes are in excess of the limit allowed by law. The defense of excessiveness applies only to the excess. The fact that the property is exempt from taxation is not listed as a permissible defense in a suit for the collection of taxes.

District admits that the courts have recognized defenses other than those enumerated in TEX.REV.CIV.STAT.ANN. art. 7329 (Vernon 1960) (Repealed 1979), but contends that in all such cases the defense involved the assertion of rights guaranteed by the Constitution itself, as opposed to rights resting solely on legislative grant. Examples are the defense of deprivation of property without due process of law and lack of equality and uniformity in taxation. See, e.g., *Town of Pleasanton v. Vance*, 277 S.W. 89 (Tex.Comm'n App.1925, judgmt. adopted), and *Aycock v. City of Fort Worth*, 371 S.W.2d 712, 715 (Tex.Civ. App.—Fort Worth 1963, writ ref'd n.r.e.). District also points out that cases, such as *Stein v. Lewisville Independent School District*, 481 S.W.2d 436 (Tex.Civ.App.—

Fort Worth 1972, writ dism'd), *cert. denied,* 414 U.S. 948, 94 S.Ct. 272, 38 L.Ed.2d 203 (1973), which recognized exemption as a defense, involve exemptions granted by self-executing provisions of the Texas Constitution, such as the agricultural use "exemption" and are, therefore, "constitutionally mandated," as opposed to the exemption on which Youth Camps relies, which is merely authorized by the Constitution and became effective only after legislative action.

Acceptance of District's argument would create some difficulty. It would make the statutory requirement that churches and schools apply for exemption somewhat meaningless in cases where the application was denied by the taxing agency, since the statute totally excludes the defense of exemption and contains no language permitting assertion of the exemption defense where proper application has been made. If the statute means what it says, there is no way of reading into it a provision adding the defense of exemption in cases where timely application for exemption has been made.

In the case before us, the taxing agencies of this state lacked the power, in view of the exemption statute, to tax the exempt property by any procedure. If the failure to follow the prescribed procedure invalidates a tax on property which is subject to taxation,[2] an attempt to tax property which is beyond the power of the taxing agency to tax must also be declared invalid, and the defense that the property in question is not subject to taxation cannot be taken away by mere legislative fiat. It cannot be held, without raising serious constitutional questions, that the legislature may deprive a citizen of the right to question the power of a taxing agency to tax his property. TEX.REV.CIV.STAT.ANN. art. 7329 (Vernon 1960) (Repealed 1979) did not deprive the taxpayer in this case of the right

to assert that its property was not subject to taxation.

■ District further asserts that Youth Camps is estopped from relying on the exemption because it waited until the tax assessments were made, the tax rolls prepared, and a suit to collect the delinquent taxes had been filed before asserting its claim of exemption. According to District, it is administratively impracticable to recognize exemptions "literally years after the tax rolls have been prepared, tax rates adopted and budgets formulated" on the basis of assumed taxable values. We reject this argument as well. District was aware of Youth Camps' contention that its property was exempt years before the taxes involved in this case were levied. This claim was persistently presented to District orally for several years. The fact that District was unresponsive to the claim does not mean that it was lulled into anything resembling a sense of security by ignorance of the claim of exemption. District was aware of all of the facts at all times and there was no failure by Youth Camps to make its position known.

Even if we were inclined to read into the applicable exemption statute a requirement of a prior administrative request for recognition of the exempt status of the property, we are unwilling to extend such gloss by adding a requirement that the application be in writing. In any event, there is nothing in the record to indicate that the question of estoppel was presented to the trial court.

The trial court erred in holding that Youth Camps was precluded from urging the defense that its property was exempt from taxation.

As already pointed out, Youth Camps limits its challenge to the action of the trial court to the contention that it was not required to file an application for exemption. While admitting it had the burden of

---

**2.** In *Town of Pleasanton v. Vance,* 277 S.W. 89 (Tex.Comm'n App.1925, judgmt adopted), the taxpayer was permitted, despite the statute limiting available defenses, to show that the tax had been levied by mere resolution rather than by

ordinance, as required by statute. The same result was reached in *Masterson v. Town of Hadley,* 265 S.W. 406 (Tex.Civ.App.—Amarillo 1924, no writ).

proving that it was entitled to the exemption, it asserts that it met its burden by obtaining favorable jury findings concerning the existence of facts supporting its claim. But, the District's motion for judgment n.o.v. also asserted that the jury findings on which Youth Camps relies had no support in the evidence. District re-urges this contention in its brief in this Court and we must consider it, since the judgment must be affirmed if the granting of the motion for judgment n.o.v. can be upheld on any ground which finds support in the record.

■■■ Where an appellate court concludes that the ground relied on by the trial court as the basis for rendering judgment n.o.v. is inappropriate or erroneous, it will enter judgment on the verdict. However, the successful movant for judgment n.o.v. may present, in support of the judgment, grounds which would vitiate the jury's verdict or would prevent affirmance of a judgment entered on the verdict. *Jackson v. Ewton*, 411 S.W.2d 715 (Tex.1967); *Fidelity & Casualty Co. of New York v. Central Bank of Houston*, 672 S.W.2d 641 (Tex. App.—Houston [14th Dist.] 1984, no writ). Therefore, we must consider District's contention, properly presented to the trial court, that there is no evidence to support the jury findings on which Youth Camps relies.

By its answers to Special Issues 1 and 2 the jury found the existence of all the requirements enumerated in TEX.REV. CIV.STAT.ANN. art. 7150, § 2a (Vernon 1960) (Repealed 1979) during the four tax years preceding 1980. According to such findings, Youth Camps was entitled to the exemption during such years.

The jury found in response to Special Issue No. 1, that Youth Camps was a "religious, educational, and physical development association, defined as an association engaged in the joint threefold religious, educational, and physical development of boys and girls, young men and young women, operating under a State or national organization of like character," for each of the tax years 1976–1979. The evidence to

support this issue included the testimony of Dr. Claud J. Bonam, the director of the Camp. Dr. Bonam testified that the Pot O'Gold Ranch, the property in question, was a Youth Camp associated with the World Baptist Fellowship, that the purposes of the Camp were those of physical development, educational, and spiritual development, and that Youth Camps, Inc. and the Pot O'Gold Ranch are operating under the World Baptist Fellowship, an organization of like character. Dr. Bonam testified that the camp has facilities for swimming, horseback-riding, basketball, baseball, volleyball, hiking, and canoeing, and that these facilities are regularly used as part of the camp activities by all of the campers. He testified that the education provided, although primarily religious in nature, includes lectures by policemen about heroin and marihuana, and some instruction about the wildlife at the Camp, as well as dactylology. Dr. Wayne Martin and Dr. Raymond Barber further testified about the common philosophy and purpose shared by the World Baptist Fellowship and Youth Camps, Inc.

In answer to Special Issue No. 2 the jury found that, for the tax years 1976–79, the property owned by Youth Camps, Inc. was reasonably necessary for and used exclusively in the conducting of the operation of the association. The phrase "used exclusively in the conducting of the operation of the association" was defined to include that use by the association by lease or otherwise for the purpose of maintaining the buildings and association, "not to include use by the association by lease or otherwise for profit." The evidence in the record to support the jury's finding consists of the testimony of Dr. Bonam to the effect that hunting on the property was an incident of the conducting of the Camp, and was a privilege granted to those persons who contributed their time and effort to the running and maintenance of the Camp. Fees were charged to some of the persons who hunted at the Camp, but the fees were used for the purchase of grain to feed the deer and other wildlife in the winter.

There was no evidence that hunting was allowed on the property for profit, or that the hunting was not a necessary incident of the function of the Camp, as a reward to those persons who were involved in the conduct of the Camp.

In reviewing a judgment *non obstante veredicto*, the appellate court must consider only the evidence and inferences which support a jury's findings, disregarding all evidence and inferences to the contrary. *Mid-American Oil & Gas, Inc. v. Borchers*, 597 S.W.2d 803 (Tex.Civ.App.— Eastland 1980, writ ref'd n.r.e.). Applying this test, we find that there was some evidence to support the findings embodied in Special Issues 1 and 2, and that the property was exempt from taxation for the years 1976–77–78 and 79.

We do not agree that the question concerning the exempt status of property always involves only a question of law. Where, as here, the existence of the exemption depends on the nature and character of the use to which the land is being put and the evidence is conflicting, the question of fact raised by the conflicting testimony must be resolved by the trier of fact. *Houston Belt & Terminal Ry. Co. v. Clark*, 122 S.W.2d 356 (Tex.Civ.App.—Austin 1938), *aff'd*, 135 Tex. 388, 143 S.W.2d 373 (1940).

However, there is no evidence to support the jury's finding, in Special Issue No. 3, that Youth Camps had complied, during the tax years 1980 and 1981, with TEX.TAX CODE ANN. § 11.19(d)(4) (Vernon 1982), which requires that the association seeking the exemption must "by charter, bylaw, or other regulation adopted by the association to govern its affairs" pledge its assets "for use in performing the association's youth development functions" and direct that "on discontinuance of the association ... the assets are to be transferred to [the State of Texas] or to a charitable, educational, religious, or other similar organization...."

There is no evidence to support the jury finding that this requirement had been met during the tax years 1980 and 1981. The only evidence in the record was that on March 20, 1982, the Board of Directors adopted a resolution pledging the assets of the association for use in performing the youth development program. The testimony was that this resolution was adopted "in order to be in formal compliance" with the Tax Code and was intended to be retroactive to January 1, 1980.

What was lacking in 1980 and 1981 was not merely "formal compliance." During those two years there was a complete lack of compliance. Further, there is no evidence of any charter provision, bylaw, or other regulation directing the manner of disposition of the association's assets on dissolution.

Since TEX.TAX CODE ANN. § 11.-19(d)(4) (Vernon 1982) did not become effective until January 1, 1980, failure to comply with its provisions defeats the claim of exemption for the tax years 1980 and 1981.

The judgment of the trial court is vacated and the cause is remanded to that court for entry of judgment that Comfort Independent School District recover from Youth Camps, Inc., the ad valorem taxes due on the property in question for the years 1980 and 1981 only, together with penalties, interest, attorney's fees and costs.