**MONTE CHRISTO DRILLING COMPANY, Appellant,**

**v.**

**Thomas A. CROSSLAND, Appellee.**

**No. 662.**

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 27, 1972.

Rehearing Denied Feb. 29, 1972.

Allison, Maddin, White & Brin, Inc., Ronald A. Brin, Corpus Christi, for appellant.

Edwards & DeAnda, William R. Edwards, Philip Maxwell, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial in favor of plaintiff-appellee in the total amount of $27,428.52, out of which $7,907.70 was awarded to Highlands Insurance Company, the workmen's com-

pensation carrier for L & W Tong Service, Inc., the employer of appellee Crossland.

Appellee Crossland sued appellant Monte Christo Drilling Corporation for damages on account of personal injuries allegedly sustained by him arising out of an oil field accident on March 30, 1968. On that date Monte Christo was drilling a well in Kleberg County, southeast of Kingsville, Texas, for Humble Oil and Refining Company, the lease owner. L & W Tong Service had been contracted by Humble to run casing at this well and plaintiff was a member of the crew sent by L & W to perform this work. The casing operation first required that the sections of casing, also sometimes referred to as pipe, be rolled down the pipe rack to the catwalk. There, each section would be lifted through the "V-doors" to the derrick floor by means of a catline—a rope strung from the draw works near the top of the derrick and powered by a spinning cathead located on the derrick floor. Some sections of the pipe had to be lifted over the steps or stairs leading up to the derrick floor before they could be rolled to the catwalk. This was accomplished by hoisting one end of the pipe up with the catline to a height where it would clear the stairs and then manually pushing it past the stairs. The pipe would then be lowered back to the rack and rolled on to the catwalk. Crossland was on the pipe rack and in the process of pushing one of these raised pieces of pipe past the stairs when it suddenly fell, allegedly causing him serious and disabling injuries.

The trial court submitted twelve special issues to the jury, some of which were conditionally submitted and not answered. The jury found in substance that the employees of Monte Christo dropped or too quickly lowered the section of casing pipe in question (issue 1); that such action was negligence (issue 1–A); that such dropping or lowering was a proximate cause of the occurrence in question (issue 2); that any of Monte Christo's employees failed to keep a proper lookout for the safety of Crossland (issue 3), which failure was a proxi-

mate cause of the occurrence in question (issue 4); that on the occasion in question, Monte Christo or its employees were negligent in dropping or lowering the section of casing pipe at the time or in the manner it was (issue 5); that such negligence was a proximate cause of the occurrence in question (issue 6). The jury refused to find that Crossland failed to keep a proper lookout for his own safety (issue 7); the proximate cause issue (No. 8) was conditionally submitted and not answered. The jury further found that on the occasion in question Crossland worked the pipe rack with slippery shoes (issue 9), but refused to find that such working constituted negligence (issue 10); and the proximate cause issue (No. 11) was conditionally submitted and not answered. The damage issue (No. 12) was answered in the aggregate amount of $27,428.52.

Appellant asserts nine points of error which principally involve the contentions: (1) That the trial court erred in refusing to submit special issues to the jury inquiring in substance whether the employees of Monte Christo were acting in the scope of their employment at the time of the accident in question; (2) that special issue one was multifarious; (3) that special issue three was too broad and general; (4) that the trial court erred in refusing to submit appellant's requested issues C & D, relating to alleged contributory negligence of appellee; (5) that the trial court erred in excluding the testimony of the witness, officer Cavazos; (6) that the trial court erred in submitting both issues 5 and 6 in addition to issues 1 and 2, and that issue 5 is multifarious; (7) that the trial court erred in refusing appellant's requested instruction in response to a question by the jury during its deliberations.

We first consider appellant's contention concerning the failure of the trial court to submit special issues inquiring whether the employees of Monte Christo were acting in the scope of their employment on the occasion in question.

Appellant duly objected to the failure of the trial court to submit scope of employment issues in connection with issues 1 and 2, 3 and 4, 5 and 6, and in such connection requested that its requested issues 1A, 3A and 5A be submitted to the jury. The requested issues read as follows:

Requested Issue 1A:

"Do you find from a preponderance of the evidence that at the time of such dropping or lowering, if any, said employees were acting within the course and scope of their employment for Defendant?

Answer 'Yes' or 'No'.

Answer: _____"

Requested Issue 3A:

"Do you find from a preponderance of the evidence that Defendant's said employee was at the time of such failure, if any, acting within the course and scope of his employment for Defendant?

Answer 'Yes' or 'No'.

Answer: _____"

Requested Issue 5A:

"Do you find from a preponderance of the evidence that at the time of such lowering, if any, such employees were acting within the course and scope of their employment for Defendant?

Answer 'Yes' or 'No'.

Answer: _____"

■ Appellant's stated contention is without merit. The issues relating to scope of employment of appellant's employees were conclusively established against appellant. Otherwise stated, appellant's employees were, as a matter of law, acting within the scope of their employment for appellant on the occasion in question and it was not necessary for the court to submit appellant's requested issues 1A, 3A and 5A. The test of a master's liability for negligent acts of his servant is whether the master had the right and power to direct and control the servant in performance of the causal act or omission. American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370 (1936). The evidence, both testimonial and documentary, showed that the appellant owned and operated the drilling rig in question and appellant's employees were in control of the instrumentality which caused the injury to appellee. Monte Christo controlled the details of operating the rig upon which the injury to Crossland occurred.

■ An interrogatory propounded by appellee to appellant inquired as to the name, employer and job of each person in the operation at the time appellee was injured. The President of Monte Christo answered such interrogatory by listing 15 names of persons included in its crews. On the trial, appellant produced the testimony of only three of these persons, and they denied any knowledge of the accident or identity of the persons running the cathead or doing the signalling. There was no evidence to the effect that appellant's employees were not acting in the scope of their employment when Crossland was injured. Under these circumstances a presumption arose that appellant's employees were within the scope of their employment when the accident occurred. On oral argument of this case counsel for appellant, with commendable candor, conceded that appellant must accept as an undisputed fact that a Monte Christo employee was operating the cathead at the time of the accident. In the light of the evidence produced the burden of proceeding was placed on appellant to offer evidence to show that their employees were not acting for it, but were using the machinery for their own purpose or outside their scope of employment. See Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057 (1940). Absent such evidence the trial court acted correctly in overruling appellant's objections to the charge of the court and refusing to submit appellant's requested issues 1A, 3A and 5A.

Appellant's points 1, 2 and 3 are overruled.

We next consider, appellant's contention, made by its sixth point of error, that the trial court erred in overruling appellant's objection to special issue number one on the ground that same was multifarious. That issue read as follows:

"Do you find from a preponderance of the evidence that the Defendant's employees dropped or too quickly lowered the section of casing pipe in question?"

Appellant argues that the special issue makes inquiry of two separate factual situations, i. e., there are two specific elements of negligence in the same issue. Additionally, appellant contends that the issue constituted an improper global submission of more than one specific issue, citing Kainer v. Walker, 377 S.W.2d 613 (Tex.Sup. 1964). Appellant also claims that such submission was harmful in that issue number one and the answer thereto have prevented appellant from determining what the jury found in it. As a result thereof, appellant says that it is prevented from making proper complaint of the jury's findings before this Court. The basis of this complaint is bottomed in appellant's assertion that there was no evidence to support a finding that appellant's employees *too quickly* lowered the pipe in question. Alternatively, appellant maintains that the evidence was factually insufficient to support a jury finding that appellant *dropped* the pipe.

■ We hold that issue number one was not multifarious. In addition, appellant's complaint that the issue was an improper global submission is inaccurate. The case of Kainer v. Walker, supra, relied upon by appellant, is not apposite to the instant situation. There is not any practical or material difference between the word "dropped" and the phrase "too quickly lowered" as used in special issue one. Either the word or phrase describes the activity of appellant which resulted in injury to appellee and have virtually the same meaning. See Webster's Seventh New Collegiate Dictionary, 1963, *Drop*, p. 255(2a) and *Lower,*

p. 501(4). While it may be argued that in a strict sense the wording of the issue, when applied to our factual situation may connote two different means of pipe descending from one point to another, this construction should not be followed here. The evidence is legally and factually sufficient to establish that the pipe fell on Crossland's foot. There is also testimony that appellant's employees were in control of the instrumentality, the cathead, that guided and lowered the pipe. With these facts in hand, the wording in special issue number one as to appellant's act of either *dropping* or *too quickly lowering* the pipe accurately describes the means by which the pipe fell on appellee's foot. The evidence was legally and factually sufficient to support either theory.

It has been held that "An issue is not to be condemned as multifarious or duplicitous merely because it groups more than one fact element therein, so long as it involves only one ultimate or controlling issue. . . ." Industrial Oxygen Company v. Campbell, 405 S.W.2d 794 (Tex. Civ.App., Waco, 1966, n. w. h.). The cited case involved the following issue: " 'Do you find from a preponderance of the evidence, if any, that at the time and on the occasion in question the defendants' reflectors on the rear of their truck-tractor-trailer had *mud* or *dirty water* on same so that the reflectors were not visible?' " (emphasis supplied) It was held that this issue submitted only one ultimate issue, that is, if the reflectors were not visible, and was not objectionable as multifarious or duplicitous, and, in any event, did not constitute reversible error. The special issue in the cited case is analogous to issue number one here. The ultimate inquiry concerns the act of appellant's employees in handling the pipe. The fact elements, *drop* or *too quickly lowered* involve only one ultimate issue, i. e., the conduct surrounding the handling of the pipe. Even if it be assumed that "dropped" and "too quickly lowered" made the issue multifarious, it appears that their inclusion in one issue in

this case would only have prejudiced appellee, and the error, if any, was harmless.

For the reasons stated above, appellant's point of error number six must be overruled.

We next consider appellant's point of error number eight which asserts that the trial court erred in overruling its objection to special issue number three. Appellant's complaint is that the issue is too broad and general and does not specify as to which of appellant's employees the failure to keep a proper lookout relates. That issue reads as follows:

"Do you find from a preponderance of the evidence that any of Defendant's employees failed to keep a proper lookout for the safety of Tommy Crossland?"

■ Appellant says that, because of the wording of issue three, it has no way of knowing which of its employees the jury found to have failed to keep a proper lookout and as a result of this that it has been denied the right of properly presenting any complaint as to the jury finding on that issue or as to whether the jury's finding on proximate cause (issue 4) was supported by the evidence. A special issue is too broad and general, and hence is improper, when it inquires about too great a portion of the total factual picture; that is, it covers several matters each of which should be submitted in a separate issue. Hodges, Special Issue Submission in Texas, page 101 (1959). However, by examining the evidence in the record, it is obvious that Crossland did not and could not individually identify the employees of appellant working as either signalman or cathead operator. In addition, other witnesses called to testify either would not or could not identify the employees. Under these conditions Crossland was not required to specifically name each employee. In Gillette Motor Transport Co. v. Whitfield, 197 S.W.2d 157 (Tex.Civ.App., Ft. Worth, 1946, affirmed 145 Tex. 571, 200 S.W.2d 624 (1947), the trial court submitted an issue on lookout involving four individuals followed by another issue inquiring as to which one or ones of the individuals involved failed to keep a proper lookout. The issues were held to be proper under the circumstances. The testimony in the instant case was sufficient to satisfy the jury that the employees of appellant were negligent. When the evidence is considered, the use of the word *any* then, to describe the negligent employees is not too broad or general. The use of *any* in the issue number three would not and did not cause confusion or allow the jury to speculate as to which employees failed to keep a proper lookout.

Appellant's point eight is overruled.

■ We next consider appellant's contention raised by its point four, that the trial court erred in refusing to submit the specially requested issues C and D. Requested issue C inquired in substance whether Crossland placed either of his feet beneath the pipe when it was not safe to do so. Requested issue D inquired in substance if such placement, if any, was a proximate cause of the occurrence in question. The trial court properly refused to submit these issues for several reasons.

There was no evidence that Crossland "placed" his feet under the pipe. The jury refused to find that Crossland's working with slippery shoes was negligence, and also refused to find that Crossland failed to keep a proper lookout for his own safety. There was no duty on Crossland's part to foresee that appellant's employees would negligently drop the pipe on him. The place where Crossland was working became unsafe only when appellant's employees dropped the pipe. A finding of "yes" to requested issue C would not constitute a finding of negligence. Additionally, there is no evidence that the placing of Crossland's feet was a proximate cause of the accident. Appellant's point four is overruled.

■ We next consider appellant's contention, raised by its point 5, that the trial

court erred in excluding the testimony of the witness officer Carlos Cavazos. The trial court heard the testimony of that witness out of the presence of the jury in connection with appellant's bill of exception. Cavazos testified in substance that he was a city patrolman and that on September 4, 1970 he heard Crossland state that his occupation was a roofer; that Crossland didn't say he was working but just said what his occupation was.

Crossland had testified in part, in answer to questions asked by counsel for appellant, as follows:

"Q   Have you worked anywhere at all?

A   Not since the accident.

Q   Not since the accident. You haven't done any roofing work at all since the accident?

A   No, sir.

Q   I suppose it would also follow you have never told anyone since the accident the occupation you had was that of a roofer, is that right?

A   No, sir, I haven't roofed any.

Q   You never told anybody—

A   I used to roof all right, when I was in the concrete business, I haven't roofed any since the accident.

Q   That has been twenty-two years ago, hasn't it?

A   Yes, been quite a while back.

Q   That being the case, you certainly wouldn't tell anyone that was your occupation.

A   No, I would not.

Q   Specifically, Mr. Crossland, on September 4th 1970,—

MR. EDWARDS: Your Honor, we object to this line of questioning and would like to approach the Bench.

THE COURT: All right, come up here.   (Conference at the Court's

Bench outside the hearing of the Jury, after which trial of the case continued as follows, to-wit:)

MR. BRIN: I will make a Bill on it later.

THE COURT: Yes, you may.

MR. BRIN: Okay, Judge, thank you."

Appellant argues that because Crossland told the jury that he had not worked at all or done any roofing since the accident that a reasonable inference to be drawn from a statement to Cavazos that Crossland was a roofer is that he had been and was engaged in doing some roofing. We do not agree. The statement that one is a roofer does not import that one is or has been working as such since a certain time. Cavazos tendered testimony was without probative value on the issue presented.

■   We are unable to find in the record where appellant followed through and laid a proper predicate concerning a statement allegedly made by Crossland on September, 4, 1970. In addition, the testimony of Cavazos was so general that it also was not admissible for purposes of impeachment. If there was error in excluding the testimony of Cavazos, it is not shown to have been harmful. More specifically, it does not appear that the exclusion of Cavazos' testimony, if error, was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. Appellant's point 5 is overruled.

■   We next consider appellant's contention, raised by its point 7, to the effect that the trial court should not have submitted issues 5 and 6 in addition to issues 1 and 2 because that action constituted a duplicitous submission of shades of the same theory of recovery, and that issue 5 is multifarious. The latter contention is substantially the same as that rejected by us in connection with special issue 1 and is without merit. A close comparison of is-

sues 1 and 5 discloses that there are differences in wording which prevent their being considered a double submission of the same ground of recovery. Even if it be assumed that those two issues submit different shades of the same theory of recovery, we cannot say that the submission of issues 1 and 5, along with issues 2 and 6 (the proximate cause issues) probably caused the rendition of an improper verdict or judgment. All of the above mentioned issues were answered consistently against appellant. Error or harm rarely arise from the submission of issues which overlap or appear to do so. See Hodges, Special Issue Submission in Texas, Sec. 55, p. 140 (1959). Appellant's point 7 is overruled.

■ Finally, we consider appellant's contention that the trial court erred in refusing its requested instruction in response to a note from the jury and in making the reply it did. In such connection appellant's approved bill of exception reads as follows:

"On April 1, 1971, while the jury was deliberating and prior to the return of a verdict, the jury transmitted to the Court a note inquiring whether or not the Defendant, Monte Christo Drilling Corporation, had agreed to pay the Plaintiff's medical expenses. Said medical expenses had previously been stipulated to by the Defendant as being a reasonable charge, but not that the treatment provided thereby was necessary, and the Court returned said question along with an excerpt of the record, a true copy of which is attached hereto and made a part hereof. Defendant requested that said question be answered 'no' and the Court refused said request and answered said question as above mentioned."

The stipulation referred to in the bill of exception reads as follows:

"MR. EDWARDS: That with respect to the medical expenses incurred by Tommy Crossland since his injury on March 30, 1968, that the items of expense listed in Plaintiff's Exhibit 27 totalling $1928.52

have, in fact been rendered to Tommy Crossland, and that the charges that have been made for those services are those usually and customarily made in Nueces County for such services, and that those services are reasonable.

MR. BRIN: That's correct."

Special Issue 12 (the damage issue), subdivision (a) thereof and the jury answer read as follows:

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Tommy Crossland for his injuries which you find from a preponderance of the evidence were proximately caused by the occurrence in question?

Answer separately in dollars and cents, if any, with respect to each of the following elements, and none other:

(a) The reasonable expenses for necessary medical and hospital care received by Tommy Crossland in the past for treatment for his injuries resulting from the occurrence in question.

Answer: $1928.52          "

Consideration of the bill of exception, the stipulation of the parties and issue 12(a) reflects that the court properly refused to grant appellant's request that the jury inquiry be answered "No". Issue 12(a) included the element of *necessary* medical and hospital care for past treatment of Crossland's injuries, which element had not been stipulated to by the parties. There was no evidence of any agreement that appellant had agreed to pay appellee's medical expenses. The trial court correctly submitted the remaining fact questions in such connection without reference to any alleged agreement. Additionally, it appears that any error relating to the jury's inquiry and the court's answer is not shown to have been harmful to appellant.

The judgment of the trial court is affirmed.