Peter S. VOSKAMP, the Estate of C.W. Bair, By and Through its Legal Representative, Mrs. C.W. Bair, and Jerry Amussen, Appellants,

v.

Roman F. ARNOLDY, John R. Arnoldy, and Triten Corporation, Appellees.

No. 01–86–00048–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 12, 1987.

Rehearing Overruled Feb. 11, 1988.

Rehearing Denied March 29, 1988.

John M. O'Quinn, Gary M. Riebschlager, John M. O'Quinn & Associates (T. Gerald Treece, of counsel), William Fred Hagans (Hagans & Sydow, of counsel), Houston, for appellants.

Barry Abrams, William B. Allison, William E. Matthews, Sewell & Riggs, Houston, for appellees.

Before LEVY, DUGGAN and HOYT, JJ.

## OPINION

LEVY, Justice.

The trial court granted a take-nothing judgment notwithstanding the verdict against appellants in this stock fraud case. We reverse and render.

During the late 1970's, Tapco International ("Tapco"), now Triten Corporation ("Triten"), was a closely-held corporation that manufactured valves for the oil industry. Roman F. Arnoldy ("Roman") was the majority shareholder, president, and chairman of the board of directors of Tapco. His son, John Arnoldy ("John"), was executive vice-president, a director, and stockholder. Appellant Peter S. Voskamp was employed by Tapco in 1968 and assumed a management position in its sales department. Appellant C.W. Bair also assumed a management position in Tapco's manufacturing plant in the early 1970's. Jerry Amussen was Tapco's controller. In 1972, Roman persuaded Voskamp and Bair to buy the stock of a retiring Tapco officer. In 1977, after Tapco sales had increased dramatically, Roman allegedly demanded that Bair and Voskamp sell a substantial portion of their stock to him at the same price that they had paid for it. Roman was allegedly upset that Bair and Voskamp had obtained their stock so cheaply and would

now participate in the increased value of the company. Voskamp refused Roman's demand, but Bair sold back approximately 425 shares. After the sale, Voskamp and Bair together owned approximately 6,000 shares of the 33,000 outstanding shares. Tapco fired both in early 1978. Jerry Amussen owned 445 shares and was fired in February, 1979.

In late 1978, the Arnoldys began to search for a prospective purchaser for Tapco or one of its divisions. They hired a business broker who arranged a meeting with a prospective purchaser, General Signal, a large conglomerate on the New York Stock Exchange. In December of 1978, three General Signal executives, including its president of acquisitions, traveled to Houston to meet with the Arnoldys and tour Tapco's facilities. This meeting lasted one day, and included a tour of Tapco and its valve division. Financial and operational information was provided to the General Signal executives, and various methods of structuring a sale were discussed. At some point after this meeting, but before April, 1979, General Signal made an offer to buy Tapco's valve division, that was rejected by the Arnoldys. Neither the meeting nor this offer was ever disclosed to appellants.

In early 1979, Voskamp and Bair filed separate suits against Roman, alleging on behalf of all Tapco stockholders that Roman had mismanaged Tapco's affairs, failed to provide promised pension benefits, and enriched himself with periodic bonuses and inflated salaries. These suits were allegedly designed to force Tapco to offer to buy back Voskamp's and Bair's stock.

Mike Webb, attorney for Voskamp and Bair in the suits, met with John Arnoldy on numerous occasions between February, 1978, and April, 1979, in order to determine the value of his clients' stock. Webb negotiated a settlement of the suits that included the purchase of Bair's and Voskamp's stock by Tapco, at $100 per share, 10 percent being paid in cash and the remainder to be paid under the terms of a promissory note. Webb stated that at no time did the Arnoldys disclose that they intended to sell

a portion of Tapco, that a prospective buyer had been located, or that an offer to buy had been made.

Jerry Amussen also sold his stock to Tapco for $100 a share without knowing the Arnoldys' intention to sell a portion of Tapco, and without knowing that a prospective buyer had been located and an offer made. Each appellant testified that if he had known of the Arnoldys' intent to sell and of the dealings with General Signal, he would not have sold his stock at that time or for that price.

In November, 1980, Tapco and General Signal finalized an agreement providing for General Signal's purchase of Tapco's valve division for $8.8 million dollars.

On April 28, 1982, appellants filed suit against Roman, John, and Tapco alleging common law fraud, stock fraud under Tex. Bus. & Com.Code Ann. sec. 27.01 (Vernon 1968), and breach of fiduciary duty. The case proceeded to trial, and the jury found that Tapco misrepresented or concealed material facts through its chairman, Roman, and its executive vice-president, John; that such misrepresentation or concealment was made to induce plaintiffs to sell their stock; that the misrepresentation or concealment involved a material fact known to defendants before plaintiffs sold their stock; that plaintiffs relied on the misrepresentation or concealment, and were thereby damaged; that the fair market value of appellants' stock was $220 per share on April 20, 1979; that appellants received $70 per share as consideration from Tapco; and that Tapco, Roman, and John willfully misrepresented or concealed material facts. The jury then awarded punitive damages to appellants in the following amounts against the respective appellees: for Voskamp: Tapco $800,000; Roman $400,000; and John $400,000; for Bair: Tapco $800,000; Roman $400,000; and John $400,000; for Amussen: Tapco $187,500; Roman $93,750; and John $93,750.

Appellants then filed a motion to enter judgment, and the appellees moved for judgment notwithstanding the verdict and to disregard certain jury findings. The

trial court granted appellees' motion for judgment notwithstanding the verdict.

Appellants contend, in points of error one through four, that the court erred in rendering judgment notwithstanding the verdict, in disregarding the jury's findings, and in refusing to enter judgment in favor of the appellants. Appellees present five reply points, any one of which, if sustained, will prevent our reaching the merits of appellants' first four points of error. We accordingly discuss them first.

■ In reply point one, appellees contend that appellants failed to challenge the judgment on each ground asserted in the motion for judgment notwithstanding the verdict. The grounds asserted in the motion were release, settlement, res judicata, collateral estoppel, no evidence, defective charge, no duty to disclose as a matter of law, preliminary negotiations between General Signal and Tapco, and waiver.

We note that the trial judge did not specify in the judgment n.o.v. the ground upon which he based the granting of the motion. However, he drafted and filed a memorandum opinion discussing the grounds asserted in the motion and his reasons for granting it. The parties do not dispute that we may logically derive the grounds upon which the judgment n.o.v. was granted from this memorandum opinion. *Clear Lake City Water Authority v. Winograd,* 695 S.W.2d 632, 638 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Although the trial judge discusses what he considers to be errors in the conduct of the trial, he states in his conclusion that, "I find no evidence to support submission óf the issues nor to support the answers thereto." We must conclude that this is the sole ground upon which the judgment n.o.v. was granted. Thus, appellant is not required to challenge the judgment upon *each* ground asserted in the motion unless it was relied upon by the trial judge in entering the judgment. However, appellees may assert on appeal those grounds alleged in their motion for judgment n.o.v., but not relied upon by the trial judge in entering judgment, to attempt to vitiate the jury's verdict. *Youth Camps, Inc. v. Com-*

*fort Indep. School Dist.,* 705 S.W.2d 333, 338 (Tex.App.—San Antonio 1986, no writ); Tex.R.Civ.P. 324(c).

Appellees' first reply point is overruled.

■ Appellees contend in reply point two that appellants' claims are barred by the settlement agreements, releases, and judgments from Voskamp's and Bair's previous suits. Amussen's claim is allegedly barred in the same way because the previous suits were brought in a representative capacity and settled on behalf of all the shareholders of Tapco.

We note initially that res judicata, collateral estoppel, and release are affirmative defenses upon which appellees have the burden of proof. Tex.R.Civ.P. 94. We have found no evidence in the record, or special issues requested and submitted to the jury, supporting appellees' affirmative defenses. In fact, appellees intentionally sought to exclude any evidence related to such allegations in the prior suits. Appellees have, therefore, failed to sustain their burden of proof.

Reply point number two is overruled.

■ Appellees contend in reply point five that the charge proposed by appellants and submitted to the jury is fatally defective and will not support a judgment favorable to appellants. Appellees first contend that special issue number one constitutes a disjunctive submission in violation of Tex.R. Civ.P. 277. The special issue reads as follows:

> Did defendant, Tapco, through its chairman, Roman F. Arnoldy, and executive vice-president, John Arnoldy, misrepresent, or conceal any material facts concerning the subsequent sale of Tapco assets to General Signal when plaintiffs sold their Tapco stock back to Tapco in April, 1979?

Appellees claim that rule 277 authorizes disjunctive submission only when two issues are mutually exclusive and that concealment and misrepresentation are not mutually exclusive issues. *See Parker v. Keyser,* 540 S.W.2d 827 (Tex.Civ.App.— Corpus Christi 1976, no writ). However, a special issue "is not multifarious because it

groups several evidentiary or subsidiary facts together, so long as it involves only one ultimate issue." *Missouri–Kansas–Texas R.R. Co. v. Shelton,* 383 S.W.2d 842, 847 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.); *see also Monte Christo Drilling Co. v. Crossland,* 477 S.W.2d 362 (Tex.Civ.App.—Corpus Christi 1972, no writ); *Industrial Oxygen Co. v. Campbell,* 405 S.W.2d 794, 796 (Tex.Civ.App.—Waco 1966, no writ).

The special issue before us is accordingly not multifarious. Concealment and misrepresentation are two different ways of accomplishing fraud. "Fraud is deducible from artifice and concealment as well as from affirmative conduct of a character to deceive." *Campbell v. Booth,* 526 S.W.2d 167, 169 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). Only one ultimate question is contained in the special issue—whether the appellees committed fraud. We conclude that this special issue does not violate rule 277.

■ Appellees next contend that the jury's answers to the special issues will not support a judgment because appellants failed to submit and obtain a favorable finding on the issue of whether appellants' reliance upon the alleged misrepresentation was "reasonable." A party asserting a cause of action for common law fraud must prove that a material representation was made; that it was false; that when the speaker made it, he knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; that he made it with the intention that it be acted upon by the party; that the party acted in reliance upon it; and that he thereby suffered an injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927 (Tex.1983). Although reasonableness is an element of reliance, the trial court submitted the issue in substantially correct form, and accordingly did not err. Tex.R.Civ.P. 279; *see West v. Carter,* 712 S.W.2d 569 (Tex.App.—Houston [14th] Dist.1986, writ ref'd n.r.e.).

In considering the entire record, we conclude that the evidence is sufficient to support a finding of common law fraud, and thus we do not find it necessary to reach the question of whether a specific finding of "reasonable reliance" is required by Tex. Bus. & Com.Code sec. 27.01.

Appellees' reply point five is overruled.

■ In their fourth reply point, appellees contend that they had "no duty" to divulge their "preliminary discussions" with General Signal, and they maintain that they disclosed "all official knowledge." They rely upon *Greenfield v. Heublein, Inc.,* 742 F.2d 751 (3d Cir.1984), and *Staffin v. Greenberg,* 509 F.Supp. 825, 836 (E.D.Pa. 1981), *aff'd,* 672 F.2d 1196 (3d Cir.1982), cases involving the duties imposed upon the officers of a corporation under the Securities Exchange Act of 1934, 15 U.S.C. sec. 78n(e) (1982), and 17 C.F.R. sec. 240.-10b–5 (1987). These cases hold that mere inquiries, preliminary discussions, or communications preparatory to a possible *acquisition* of one company by another, do not require disclosure, but that disclosure is required only when there are firm offers for acquisitions, or an acquisition seems reasonably assured at the time when the target corporation or its insiders are purchasing shares from the shareholders. However, appellees have ignored the fact that these opinions involve only *merger negotiations.* The case before this Court concerns *negotiations to sell corporate assets,* to which the rule in *Greenfield* and *Staffin* is not applicable. *See Paul v. Berkman,* 620 F.Supp. 638 (W.D.Pa.1985).

Appellees fourth reply point is overruled.

■ Appellees contend in reply point three that "appellants adduced no evidence to support the material allegations in their second amended petition that appellees had reached an agreement to sell Tapco assets prior to the redemption of appellants' stock."

This is an attack on a variance between the appellants' pleadings and the proof. Appellees did not object to submission of the special issues relating to the sale of Tapco assets for the purpose of limiting their scope only to what was alleged in the pleadings and supported by the evidence. Therefore, they have waived their com-

plaint. *Monsanto Co. v. Milam,* 494 S.W.2d 534 (Tex.1973).

Appellees' third reply point is overruled.

We now turn to the merits of appellants' points of error one through four, concerning whether the trial court erred in rendering judgment notwithstanding the verdict and disregarding the jury's findings, and in refusing to enter judgment in favor of the appellants. To sustain the action of the trial court, it must be determined that there is no evidence to support the jury's findings. In making this determination, we are required to view the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences that support them, and to reject the evidence and inferences contrary to those findings. *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex. 1986).

We find that there was evidence to support the jury's findings. Anna Paige, Roman's administrative assistant since 1974, discussed with John the possibility and wisdom of selling the valve division in September, 1978. She testified that Roman and John had a meeting to discuss the sale of the valve division, and asked her to contact a business broker. In October or November, 1978, they hired Mark Jones as their business broker. Jones then found a prospective purchaser, General Signal. She testified that Jones stated that General Signal expressed a strong interest in buying Tapco or part of it, and that the Arnoldys were also interested in selling to General Signal.

Jones arranged a meeting that was held in December, 1978, between three General Signal executives and the Arnoldys. During this meeting, Tapco's sales, markets, products, and financial information were discussed as well as various methods available for structuring a sale. Paige testified that General Signal asked for more financial information, which she provided after the December meeting.

Paige further testified that after this meeting, the Arnoldys decided to attempt to re-acquire the stock from Voskamp and Bair. She stated that the Arnoldys did not want them participating in the profit realized by the sale and decided to conceal the meeting with General Signal. Paige also testified that an initial offer was made by General Signal prior to April, 1979, and that the Arnoldys rejected this offer, hoping to negotiate a better sales price.

John Arnoldy admitted that any serious interest of General Signal to purchase Tapco or its valve division was material to Voskamp, Bair, and Amussen. He also stated that any offer from General Signal to buy the valve division, regardless of its acceptance, and any intent or serious interest by him or his father to sell the valve division, were also material facts. He stated that they did not disclose any of this information because they decided that it was not material. Voskamp, Bair, and Amussen each testified that he would not have sold his stock as part of the previous settlement agreement if he had known this information.

There is also evidence to support the jury's findings concerning the value of the stock. Appellants' expert, James Vinson, testified that the value of the stock on the day upon which it was sold was $264, and appellees' expert, Albert Moore, testified that appellants' stock was worth $233 a share if Tapco's earnings figures for 1979 were included in his calculations. There was also testimony that the cash value of the stock at the time of the actual sale on April 20, 1979, was $70 a share.

Appellees contend in their third cross-point that the evidence was insufficient to support the jury's award of punitive damages. They argue that the punitive damages award alone is greater than Tapco's total net worth as of April, 1979, when appellants sold their stock to the company; that the award is more than 20 times the total profit Tapco has earned from April, 1982, through April, 1985; that the total damage award is greater than Tapco's total net worth as of April, 1985; that the total damage award is twice the amount of the actual gain Tapco derived from the sale of the valve division assets in April, 1979; that the assessment of the $3.75 million

dollars in punitive damages will literally force Tapco to go into bankruptcy and result in the loss of several hundred jobs and the total loss of equity of all other Tapco shareholders and investors.

The amount of punitive damages to be awarded depends upon the facts of the case and rests largely within the sound discretion of the jury. *Carr v. Galvan*, 650 S.W.2d 864 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Exemplary damages must, however, be reasonably proportioned to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). Those actual damages, when computed by multiplying the number of shares sold by the difference in the sales price ($150 per share), and the present cash value on the day they were sold, are $540,000. Voskamp's actual damages computed in the same way are $395,250. Amussen's actual damages are $66,600.

The largest ratio between punitive damages and actual damages is Amussen's. Amussen's total punitive damage award, when compared with his actual damages, reveals a ratio of almost six-to-one. Voskamp's ratio is four-to-one, and Bair's ratio is approximately two-to-one. Having viewed these awards in light of the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a sense of justice and propriety, we conclude that the jury's award of punitive damages is reasonable in light of the Arnoldys' deliberate concealment of material information intended to cause the appellants to relinquish the fair market value of their stock. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981).

Appellees further contend in reply point six that there was no evidence to support the punitive damages findings because the appellees' actions were somehow justified by the "business judgment" rule. We note that the "business judgment" rule is not a defense to suits alleging fraud; otherwise it could thereby be used to justify fraud if the fraudulent act were thought to be convenient or profitable. *See Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 229 Cal.Rptr. 456, 465 n. 14, 723 P.2d 573, 582 n. 14 (Cal.1986); Joplin, *Techniques for Protecting Directors; Preservation of the Breed*, Advanced Corporate and Business Law Course, State Bar of Texas, March, 1987, Page B–9 through B–10.

In cross-point two, appellees contend that the evidence is insufficient to support the jury's findings on the non-damages issues because Anna Paige's testimony was both not credible and controverted. They claim that her testimony was so riddled with uncertainty, and lack of definiteness, that it had no probative value as was the case in *Langley v. Texas Bank & Trust Co.*, 454 S.W.2d 815 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). We disagree. Portions of Paige's testimony such as concerns the December, 1978 meeting, were corroborated by John Arnoldy. Appellees further contend that their impeachment of Paige, which consisted of the introduction of evidence that she had been fired for embezzling money from Tapco, destroys her credibility and the probative force of her testimony. We note the long-familiar rule that the credibility of the witness and the weight to be given to her testimony were within the province of the jury. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

We accordingly sustain appellants' points of error one through four, and overrule appellees' cross-points two and three, and reply point number six.

Appellees contend in their first cross-point that they are entitled to a new trial because appellants' counsel made several incurable prejudicial remarks during the rebuttal phase of closing argument. The remarks in question are as follows:

This case involves a very important issue beyond what was done to Hose and Pete. Most people—you included—are at the mercy of some company, for your retirement, for your capital E.S.O.P. plan, for your thrift plan. They promise you:

"Come with us, and we will treat you right. Buy our stock" or accept, as part of your compensation, stock in the company, like some companys do. And after years of faithful service, you hear these horror stories. Somebody works right up to one day before the age of 65 and gets fired, or the company sells out to another company, and they wipe out the pension plan. These are the kind of issues we are talking about.

So this is what it comes down to. They got these guys, they got their stock. They took it away from them at $40 a share, $70 a share, whatever—for a heck of a lot less than its worth—so we are in court talking about—trying to talk about what's fair, and what should be done, since these men have been short changed, to do right.

They don't want to talk about that. Because they know they can't win that argument. When you're wrong about something, when your—like the facts—it is a typical lawyer's trick: attack a lawyer; attack anybody. Attack the victim. You have heard about it. Attack the witnesses. We'll just attack Anna Paige.

There's Hose Bair, dying. Dying of cancer, and she knows he got ripped off. Yeh, her conscience bothers her. I wish it bothered all the people that did it to him.

. . . . .

Just remember this. Twenty percent of the $8.5 million dollars is $1 million seven hundred thousand dollars. That's what they should have got. What they did get was $40 a share times $6,700. I calculated the $270,000 [sic] they got short changed five hundred thousand.

You've got forty percent fee. That's about $2 million dollars put down in those answer lines that $2 million dollars against Tapco, against the Arnoldys, and then it will be made right. They won't be short changed. They will be human beings again and go back to their family, say "Okay. The jury in Harris County said, no more company. You are not going to treat people like this."

Appellants failed to object to any of these remarks nor did they request any curative instructions.

The Texas Supreme Court has described the elements that the appellees must establish to obtain a reversal for improper jury argument:

In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for a mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge ... *There are only rare instances of incurable harm from improper argument.* The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence.

*Standard Fire Ins. Co. v. Reese,* 584 S.W. 2d 835, 839–40 (Tex.1979) (emphasis added) (citations omitted.)

We note that the remarks occurred within the 10 minutes allowed for rebuttal argument. We conclude that each of these remarks, if improper, could have been cured by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. We also conclude that these remarks probably did not affect a material

finding. Appellees waived any error by failing to object.

Appellees' first cross-point is overruled.

■ In cross-point four, appellees contend that appellants were precluded from recovering punitive damages in an amount in excess of twice any actual damages award. This cross-point is predicated on the assumption that appellants have failed to prove their common law cause of action for fraud and are restricted in their recovery of punitive damages to an amount not greater than twice any actual damages, as provided in the statutory fraud provision contained in Tex.Bus. & Comm.Code Ann. sec. 27.01. We do not reach this point of error in light of our conclusion that the appellees' assumption is wrong and that the evidence supports a recovery for common law fraud.

■ Appellees contend in their fifth cross-point that the court erred in admitting testimony of appellants' expert, Dr. James Vinson, an economist, because appellants allegedly did not comply with the court's order requiring that they reduce to writing and provide to appellees all the discoverable factual observations, supporting data, calculations, and opinions of Vinson. Vinson agreed to supplement his deposition if he was requested to render any opinion regarding value. Appellants did not supplement their answers to interrogatories or deposition to provide the requested information. Appellees contend, therefore, that the court should not have allowed Vinson to testify. Tex.R.Civ.P. 166b(5), 215(5).

On January 16, 1984, appellants filed written answers to interrogatories stating that the value of the stock was to be determined by the underlying value of the assets of Tapco. They further stated that the value of the stock on the day it was sold was between $400 and $600 per share.

On January 18, 1984, Vinson's deposition was taken by appellees, in which he stated, according to the record before us, that he rendered an opinion regarding the value of Tapco stock, relying upon information contained in "other depositions," and that the

determination of value had been made by using the "accepted procedure." He then contradicted himself and stated that he had not calculated a price per share. We cannot tell from the state of the record whether Vinson supplied the requested information or not. It was the appellees' duty to place enough of his testimony from the deposition in the record to enable us to make this determination. Not having done so, appellees have waived their complaint. Tex.R.App.P. 50(d).

■ Appellees next argue that the court erred in admitting, over their objection, evidence of events occurring after April 20, 1979. Specifically, they complain of the admission of evidence of the amount paid by General Signal to Tapco for the valve division, and evidence of prices at which other shareholders sold their Tapco stock after April, 1979. In determining issues of fraud, courts allow a wide latitude, and the evidence thereon may embrace *all the facts and circumstances that go to make up the transaction,* disclose its true character, explain the acts of the parties, or throw light on their objectives and intentions. *Campbell v. Booth,* 526 S.W.2d at 169. We conclude that this evidence was relevant to explain the acts of the appellees and to illuminate their objectives and redundant intentions. Additionally, Vinson testified that later events had a reasonable relationship to the value of the stock when it was sold on April 20, 1979. *See English v. Ramo, Inc.,* 474 S.W.2d 600, 610 (Tex.Civ.App.—Dallas 1971), *rev'd on other grounds,* 500 S.W.2d 461 (Tex.1973).

■ Appellees next contend that the court erred in admitting evidence of the dispute and allegations that were involved in the previous suits filed by Voskamp and Bair. Appellees direct us to no specific objection of theirs in the record that was overruled by the trial court in relation to allegedly inadmissible evidence. Indeed, they have waived any alleged error because they placed such facts and allegations into evidence of their own volition through the witness Michael Webb. Appellees' referenced passages show only testimony concerning the sale of appellants'

stock and the many objections by appellees' counsel that were sustained. No error has been preserved to support this contention.

Appellees finally contend that the trial court erred in excluding evidence of the prior settlement agreements, releases, and binding judgments. This occurred when the documents were tendered pursuant to a *limited* offer to support appellees' objection that appellants' counsel was attempting to elicit testimony that was somehow theoretically barred by "res judicata" and, therefore, irrelevant. Appellees direct us to no *general* offer of these documents for admission into evidence. These documents were not authenticated, and appellee has not shown that a stipulation of admissibility had been entered into between the parties. We have not been cited to any authority in support of appellees' theory and conclude that the trial court did not err.

Appellees' fifth cross-point is overruled.

Appellees contend in their sixth cross-point that the court erred in refusing their requested jury instructions and special issues.

Appellees first argue that the court erred in refusing to submit their requested instruction regarding materiality. The requested instruction is consistent with the "no-duty to divulge preliminary discussions" argument which has already been considered in reply point four. Appellees therein contended that preliminary discussions were not material as a matter of law. We rejected this argument and reply point four and concluded that it was not error to refuse an instruction thereon. See *Lambert v. H. Molsen & Co., Inc.*, 551 S.W.2d 151 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.).

Appellees next complain that the court erred in refusing to submit appellees' requested instruction regarding the "business judgment" rule. In our analysis of reply point six, we concluded that the "business judgment" rule is not a defense to suits alleging fraud. It follows, of course, that appellees were not entitled to an instruction thereon.

Appellees next argue that the court erred in refusing to submit their requested issue and instruction regarding waiver. They claim that by selling their stock as part of the prior settlement, the appellants knowingly and intelligently waived the right to demand a higher price on different terms thereafter. Appellees cite no authority for this proposition, and we disagree. If accepted, this principle could be invoked to defeat any claim for fraud related to the sale of stock that had been based on misrepresentations or concealment. "Waiver" is generally conceived as an intentional relinquishment or abandonment of a *known* right or privilege. "Fraud vitiates whatever it touches" and cannot be waived. *Stonecipher v. Butts*, 591 S.W.2d 806, 809 (Tex.1979).

Appellees' cross-point number six is overruled.

In cross-point number seven, appellees contend that the courts have not yet resolved the proper rate of prejudgment interest to be applied to non-personal injury cases. Appellees seek to have the case remanded to the trial court to determine, based upon equitable principles, the correct rate of prejudgment interest.

We see no reason why the reasoning and rate of prejudgment interest applied in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), should not be controlling in a case involving the intentional tort of fraud. *See Crown Cent. Petroleum v. National Union Fire Ins. Co.*, 768 F.2d 632, 636 (5th Cir.1985). *Cavnar* allows the recovery of pre-judgment interest in wrongful death and survival actions at the rate set by Tex.Rev.Civ.Stat.Ann. art. 5069-1.05 (Vernon 1987), in order to fully compensate the plaintiff for his injuries and to encourage settlement. Whether the measure of recovery is fixed by conditions existing at the time the claim arose is the determinative factor in awarding pre-judgment interest. Both of these policies are also applicable to an action for fraud. Accordingly, we hold that appellants are entitled to pre-judgment interest at the rate set by article 5069-1.05.

Appellees' seventh cross-point is overruled.

The judgment of the trial court is reversed, and judgment is rendered in favor of appellants for actual and punitive damages as found by the jury, pre-judgment interest, post-judgment interest, and costs of court.

Before EVANS, C.J., and DUGGAN, HOYT and LEVY, JJ.

## ON MOTION FOR REHEARING

EVANS, Chief Justice.

In their motion for rehearing, the appellees have raised several complaints that warrant further discussion.

The appellees contend that we erroneously overruled their reply point two, because of our decision that the appellees failed to offer evidence in support of their affirmative defenses of res judicata, collateral estoppel, and release. The appellees argue that the res judicata and collateral estoppel issues were properly presented to the trial court by the tender of the "judgment roll" in the prior shareholder's derivative litigation. The appellees further assert that the trial court accepted this offer of proof, acknowledged that the records had been placed in evidence, and excluded the evidence from the jury's consideration only to avoid prejudice to either side. The appellees argue that the binding effect of the prior judgment and settlement agreements presented questions of law for the court, rather than the jury, and that the judgments in the prior proceedings must be given conclusive effect "not only on the matter actually raised and litigated, but on every other issue which might have been litigated as an incident to or in connection with that litigation."

We will assume, for the purpose of this discussion, that the prior judgment and releases were properly presented in evidence before the trial court. We will also assume that the trial court considered such "evidence" as a basis for its decision, notwithstanding the recitations in the memorandum opinion indicating that the basis of the court's decision was that "no evidence" existed to support the jury's verdict.

The appellees cite, in support of their contention that the judgment in the prior litigation should be given conclusive effect, *Vartanian Family Trust v. Galstian Family Trust*, 724 S.W.2d 126, 128 (Tex. App.—Dallas 1987, no writ). In that case, two families, the Vartanians and the Galstians, entered into an agreed settlement of litigation involving the use of joint venture funds, and pursuant to the settlement, a final order was entered dismissing with prejudice the claims of all parties. Under the settlement agreement, an apartment unit, which had been managed by the joint venture, was awarded to the Vartanian family, who then sold it to a third party. Several years after entry of judgment, the Vartanian's purchaser brought suit, alleging the fraudulent concealment of the existence of termites in the apartment unit; the Vartaniens, in turn, sued the Galstians for contribution and indemnity. The trial court granted a summary judgment based on the Galstein's defense of res judicata, and the Vartanians appealed. Affirming the trial court's judgment, the Dallas Court of Appeals concluded that the prior judgment was binding and conclusive, notwithstanding the Vartanien's claim that their claim of fraud in the inducement was never presented in the prior action and that at the time of the prior action, the Vartanians lacked notice of the potential claim. *Id.* In its decision, the Dallas Court of Appeals broadly stated that a prior judgment is conclusive "not only on the matters raised and litigated but also on every other matter which the parties might have litigated and had decided as an incident to or essentially connected with the subject matter of the litigation." *Id.*

We recognize the general rule that a prior judgment, valid on its face, must be given conclusive effect until it is set aside by a bill of review proceeding. *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706 (1961). We also recognize the rule that a valid judgment is res judicata in all subsequent actions between the same parties involving "the points at issue and adjudi-

cated in the first suit." *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex. 1971). Thus, res judicata bars the subsequent litigation "of all issues connected to a cause of action or defense which, with the use of diligence, might have been tried in the former action, as well as those that were actually tried." *Id.; Ogletree v. Crates,* 363 S.W.2d 431 (Tex.1963).

But this rule of issue preclusion applies only when the cause of action in the subsequent suit is identical to the cause of action asserted in the prior proceeding. *Griffin v. Holiday Inns of America,* 496 S.W.2d 535, 538 (Tex.1973). That is, the earlier judgment is res judicata of the second suit only if the claim or controversy at issue in the earlier suit is identical to the "subject matter" of the second action. *Id.* at 537; *Freeman v. McAninch,* 87 Tex. 132, 27 S.W. 97 (1894). Therefore, a judgment rendered on one claim or cause of action is not necessarily conclusive of all claims or causes of action later asserted against the same party, even though they may relate to the same property or arise out of the same transaction. *Griffin,* 496 S.W.2d at 538.

> Courts generally agree that a judgment is conclusive as to all matters that were considered or should have been considered in the suit. The problem is in determining how much of what could have been considered in the first suit, but was not, is merged in or barred by the judgment rendered. As a general rule a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit.

*Griffin,* 496 S.W.2d at 538.

■ The cause of action asserted by the appellants in this case is quite different from the claims asserted by appellants, as stockholders of Tapco, in their earlier derivative actions. In those actions, the appellants sought an accounting and other relief because of the alleged mismanagement of Tapco by Arnoldy, a corporate officer. In the present case, the appellants sought damages against Arnoldy because of his alleged misrepresentation and concealment of facts regarding his intended sale of company assets, which caused the appellants to relinquish their stock for less than the full market value. Although the appellants' claims arose out of the same transaction, i.e., the settlement of the pre-existing litigation, their cause of action in this case is not the same as their claims asserted in the derivative lawsuits.

We therefore conclude that the appellants' cause of action asserted here is not so substantially similar to that asserted in the prior actions, that the issues presented here should have been brought and decided in the prior action. *See Gilbert v. Fireside Enter., Inc.,* 611 S.W.2d 869, 880 (Tex.Civ. App.—Dallas 1980, no writ) (concurring op.). *See also Buck v. Rogers,* 709 S.W.2d 283 (Tex.App.—Corpus Christi 1986, no writ) (suit for breach of contract and common law fraud and to obtain declaratory judgment on contract held not barred by prior judgment incorporating settlement agreement); *Dobbs v. Navarro,* 506 S.W.2d 671 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ) (judgment in suit to enforce insurance policy held not a bar to a subsequent suit to impose a constructive trust for insured's fraudulent payment of premiums); *Griffin v. Holiday Inns of America,* 496 S.W.2d at 535 (suit on quantum meruit based on contract not barred by prior action on the contract); *Carruth v. Allen,* 368 S.W.2d 672 (Tex.Civ.App.—Austin 1963, no writ) (judgment against plaintiff based on contractual obligations not a bar to subsequent action for fraud in inducement of contract).

We therefore reaffirm our previous denial of appellees' reply point two.

■ We next consider the appellees' contention, asserted in their fifth cross-point, that the trial court erred in admitting testimony of the appellants' expert, Dr. James Vinson, concerning the market value of their stock. In our earlier opinion, we concluded that the appellees had not brought forward the deposition testimony of Dr. Vinson showing the extent of his testimony about matters that were the subject of appellees' interrogatories, and we

pointed out that it was the appellees' duty to bring forward such testimony for this Court's review. Tex.R.App.P. 50(d). We accordingly held that the appellees had waived their fifth cross-point of error.

In their motion for rehearing, the appellees refer to their designation of matters to be included in the appellate record, which is contained in a supplemental transcript, and argue that because of this designation, it was the district clerk's duty to prepare and transmit Dr. Vinson's deposition to this Court. We have again examined all materials filed in the record of this appeal, and we do not find a copy of Dr. Vinson's deposition. Because it was the appellees' clear duty to make the deposition a part of the record for this Court's review, we again deny their fifth cross-point of error. *See Attorney General of Texas ex rel. State of California v. Segree*, 694 S.W.2d 383, 384 (Tex.App.—Corpus Christi 1985, no writ).

The appellees also contend in their motion for rehearing that this Court erroneously treated their cross-point two as raising only "no evidence" contentions. Under that cross-point, the appellees assert that the evidence is insufficient to support the jury's findings to the first five special issues because the "only testimony" supporting those findings is that of the witness, Anna Paige. The appellees argue, under this cross-point, that the witness' testimony was so discredited, it is "simply insufficient" to support the jury's answers." Having reconsidered the appellees' contentions, in the light of the entire record, we again conclude that the weight and credibility of this testimony was a matter for the jury, and that it was not so discredited and incredible as to have no probative effect. Because this is the sole argument asserted by the appellees under this cross-point, we again deny it.

We have given due consideration to the other contentions advanced by the appellees regarding the alleged errors in our original opinion, and those contentions are overruled.

 The appellees have also filed a motion seeking leave to amend their brief and to file a supplemental transcript, asserting charges of improper communications between appellants' counsel and the jury. These allegations, and the affidavits filed in support thereof, are sharply contested by the appellants' response and controverting affidavits. The charges and counter-charges contained in these documents give rise to serious concern about whether there were improper communications with and undue pressure placed on the jury, both before and after the verdict.

We have concluded that the appellees' motions for leave to amend and file supplemental transcript should be denied. First, we note that the appellees did not file these motions until after we rendered our judgment in the case, although appellees admit they had such information before the issuance of our judgment. In this respect, we do not deem the appellees' explanation of the need for maintaining confidentiality as a justifiable reason for their failure to make their complaint known to this Court, before rendition of our judgment.

But more importantly, the matters asserted in the appellees' motions present contentions outside the record, which are raised here for the first time on rehearing. We conclude that these matters are not properly before us for review. *See Holmquest v. Priesmeyer*, 574 S.W.2d 173, 179 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ) (op. on reh'g); *Brotherhood of R.R. Trainmen v. Luckie*, 286 S.W.2d 712, 718 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.) (op. on reh'g); *City of Fort Worth v. Burnett*, 115 S.W.2d 436, 442 (Tex.Civ.App.—Fort Worth 1938, no writ) (op. on reh'g). To determine the truth of such allegations obviously requires an evidentiary determination beyond the scope of this review. *See I & G.N. Ry. Co. v. Anderson County*, 59 Tex. 654 (1883) (op. on reh'g). Thus, the contentions advanced should properly be resolved by appropriate bill of review proceedings, where evidence may be presented and a thorough factual determination made. *See Winters Mut. Aid Ass'n v. Reddin*, 49 S.W.2d 1095 (Tex.Comm'n.App. 1932, holding approved). Such a bill of review proceeding may be conducted simultaneously with the appellate process. *See*

*American Standard Life Ins. Co. v. Denwitty,* 256 S.W.2d 864, 868 (Tex.Civ.App.—Dallas 1953, writ dism'd); *Smith v. Rogers,* 129 S.W.2d 776 (Tex.Civ.App.—Galveston 1939, no writ); 4 R. McDonald, Texas Civil Practice in District and County Courts, sec. 18.27.6 (rev. 1984).

We therefore deny the appellees' motions for leave to file the amended brief and supplemental transcript and grant the appellants' motions to strike those documents from the appellate record. In accordance with this ruling, we deny the appellants' motion to seal the supplemental record and order that such materials be returned to the appellees.

This ruling is made without prejudice to the appellees' right to initiate bill of review proceedings in the trial court relating to the matters asserted in the amended brief and supplemental transcript.

The motion for rehearing is overruled.

LEVY, J., recused.